# JAMES GOODHEART

## *v.*

# CALEB JOHNSON.

1. CHATTEL MORTGAGE—*whether fraudulent in not showing real state of facts.* Although a chattel mortgage on its face may appear to be given to secure an absolute debt, yet, if in good faith it is given in the most part to secure against a contingent liability as surety, the latter being a good consideration, it will not thereby be held fraudulent and void as to creditors of the mortgagor, and although the mortgagee has not in fact paid anything as surety, still, if he will have to pay debts as such, he may hold the property or its proceeds to apply upon the debts for which he is surety.

2. SAME—*allowing mortgagor to sell, as showing fraud.* If a mortgagee permits the mortgagor to sell the mortgaged chattels in the ordinary course of trade, in the same way after as before the mortgage was made, this will be such a perversion of the mortgage from its legitimate purpose as a security as to render it fraudulent in law, and void as to creditors of the mortgagor.

3. But when the mortgagee gives written permission to the mortgagor to sell the mortgaged chattels at public sale, taking the notes given to himself, and also taking the cash paid, this, not being inconsistent with the rights of the mortgagee, will not render the mortgage void as to creditors.

4. When a chattel mortgage embraces a large amount of property, the mortgagee, by allowing in several instances the sale of a few articles, being inconsiderable in value as compared with that of the whole property, this can not be held to characterize the mortgage as fraudulent. It can be allowed no greater weight than as a circumstance to be considered in determining whether the mortgage was originally made to hinder and delay creditors.

APPEAL from the Circuit Court of McLean county.

This was an action of replevin, by appellee against appellant. One Milton Bozarth recovered a judgment for about $1,827 against Ward P. Johnson, the son of appellee, on the 24th day of February, 1876, on which an execution issued the same day and came into the hands of appellant, sheriff of the county, who levied it, on the 25th day of February, 1876, upon the property in controversy, being of considerable amount, consisting of cattle, horses, hogs, wagons, harness, corn, hay and divers farming implements.

Appellee replevied the property, claiming title to it under a chattel mortgage from Ward P. Johnson to himself. The only question arising, is respecting this chattel mortgage, whether or no it was fraudulent as against creditors.

The chattel mortgage was executed on the 10th day of November, 1875, to secure the payment of a promissory note for $6,200, of even date therewith, made by Ward P. Johnson to his father, Caleb Johnson, the appellee, payable two years after date; the mortgage being in the usual form, with a provision that the mortgagor might retain the possession and use the property until the time of payment of the note.

The testimony in the case was chiefly that of appellee and Ward P. Johnson, which was without contradiction. It appeared therefrom, that Ward P. Johnson owed appellee a note for $500, and that appellee was surety for his son, Ward P. Johnson, on several notes to different parties, amounting, in the aggregate, to as much or more than the note for $6,200, which debts appellee would have to pay, and that the note and chattel mortgage were given to secure him for said indebtedness and against said suretyship; that appellee had permitted Ward P. Johnson to sell a mare, a part of the mortgaged property, and appropriate the proceeds to the payment of a debt not owing to appellee, and for which the latter was not surety; also, to sell five shoats to a man that he, Ward P. Johnson, owed for labor; also, had permitted Ward P. Johnson to sell some of the fat hogs covered by the mortgage, to the amount of about $350, which was all paid, except about $100 on debts for which appellee was surety; that appellee had himself shipped a lot of fat cattle covered by the mortgage, to Chicago, and sold them, and appropriated the proceeds on debts for which he was surety. The following writings were in evidence :

"*February* 5, 1876.

"W. P. JOHNSON:

"You are hereby notified that you have my consent to sell at public or private sale all or any part of the property named

in the chattel mortgage you gave me on the 10th day of November, 1875, with the special understanding that if sold on time, the notes are to be given in my name, and to be applied on the aforesaid mortgage.

CALEB JOHNSON."

"*Public Sale.*—I will sell at public sale, four miles south of Danvers, Friday, February 25th, 1876, the following personal property, to-wit: One span of mules, eight head of horses, and a lot of two and three years old cattle steers, fifty head stock hogs, three farm wagons, one mower, one corn planter, one hay rake, three double cultivators, two double shovel plows, four breaking plows, two harrows, four double sets wagon harness, one set double buggy harness, and numerous other articles. Terms of sale: a credit of nine months will be given on sums over $5, purchasers giving notes with approved security; $5 and under, cash. Positively no property to be removed until the above terms are complied with. Sale will commence at ten o'clock, a. m.

W. P. JOHNSON."

The property thus advertised for sale was the same property as embraced in the mortgage, and was replevied in this case on the day advertised for the sale, and afterwards sold on that same day.

As bearing on the above writings, appellee testified:

"We determined to sell the property, and he (Ward P. Johnson) advertised it in his own name, with my consent. He agreed that I should have the notes taken in my name and hold them in lieu of the property. It was announced at the sale, that the sale was made under the mortgage for my benefit. I took all the sale notes in my name. Some one told me there might be trouble to my son unless permission was given in writing to sell, and I gave him written consent; also the sale notes are to be applied to the debts I am security on, and they will not half pay them."

This was substantially all the testimony bearing upon the question involved. Upon trial by the court without a jury,

the court found and gave judgment for the plaintiff, and defendant appealed.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Messrs. STEVENSON & EWING, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is insisted that upon the state of facts appearing, the chattel mortgage was fraudulent and void as against creditors. The transaction was in fact somewhat different from what it appeared to be on its face. Still, if the mortgage, for the most part, was not to secure the payment of an absolute debt, as it purported, but was in truth, and in good faith, to secure against a contingent liability as surety, the latter would be a good consideration and sufficient to sustain the mortgage. And although appellee had not in fact paid the debts for which he was surety, if he would have them to pay, as was the undisputed testimony, he might well hold the property or its proceeds to apply to the payment of such debts.

But the point more particularly relied on by the appellant, as avoiding the mortgage, was, permitting the mortgagor to make sale, to the extent which he did, of the mortgaged property. It is contended that this vitiated the mortgage, under the decision in the case of *Barnet* v. *Fergus et al.* 51 Ill. 352, where it was held that if the mortgagee permits the mortgagor to make sale of the mortgaged property in the ordinary course of trade, and in the same way after as before the mortgage was made, it would be such a perversion of the mortgage from its legitimate purpose as to render it fraudulent in law and void as to creditors. The mortgage there, among other property, covered certain books and blanks, which were held by the mortgagor for sale, and the evidence showed that he continued, with the knowledge of the mortgagee, to sell these books and blanks in the same way after as before the mortgage was made. In such a case as that, the mortgagor going on and selling the goods in the same way as before, for

his own benefit, the mortgage does not serve the purpose of a security for the mortgagee's debt, and is not being held for such purpose, but it is made to perform the office of a shield. to protect the property mortgaged from the reach of creditors. Quite different was the case here. The written permission to sell, given in evidence, and under which the bulk of the property was sold at public sale, was not for the benefit of the mortgagor in the way of receiving the avails of the sale, but was for the benefit and on the account of the mortgagee, he to receive the proceeds, as he did. This was nothing inconsistent with the position and rights of the latter as mortgagee, as was the dealing in the case referred to, and for which reason it was there held to avoid the mortgage.

The three particular instances here testified to, in which the mortgagor was allowed to sell at private sale, and hold the proceeds for his own benefit and not in accordance with the mortgage, were exceptional cases, respected inconsiderable portions of the property, not to be held as characterizing the transaction between the parties, and we can not look upon them as enough to bring the present case within the rule of *Barnet* v. *Fergus.*

We can allow to them no greater weight than as circumstances which might rightfully be considered in determining the question whether the mortgage was originally made to hinder and delay creditors. It can not be truthfully asserted, with respect to the present case, that the mortgagor continued, with the knowledge of the mortgagee, to sell the mortgaged property in the same way after as before the mortgage was made.

We find, then, no case of fraud in law here, for which the mortgage should be pronounced void.

As to the question of fact, the intention of the parties in the making of the mortgage, whether honestly and in good faith to secure the payment of an indebtedness, and against liabilities as a surety, or to hinder and delay creditors, that was for the court below, upon which all the evidence we have considered would be pertinent; and the finding of the court thereon

we do not perceive sufficient reason to disturb. The judgment will be affirmed.

*Judgment affirmed.*