**Arlie Love and Ethel Love, Plaintiffs-Appellants, v. Jack Levisey, Defendant-Appellee.**

### Gen. No. 10,989.

Second District.

November 5, 1956.

Released for publication November 23, 1956.

L. E. Ellison of Sterling, for appellants.

L. D. Spaulding, Jr. of Princeton, for appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On June 24, 1954, James F. Haffey borrowed $700 from the Tampico National Bank of Tampico, Illinois, and, as evidence thereof, Haffey and the plaintiffs executed their promissory note for that amount payable to the order of the bank in installments of $50 per month with 6% interest per annum and delivered the same to said bank.

On July 1, 1954, Haffey borrowed the further sum of $2137.50 from said bank, and as evidence thereof Haffey and the plaintiffs executed their promissory

note for $3007, payable to the order of the bank eighteen months after date in installments of $170 per month with interest included, and delivered the same to the bank. This note recited that it was secured by a chattel mortgage. Simultaneously with the execution of the $3007 note on July 1, 1954, Haffey executed and delivered to the plaintiffs a chattel mortgage which described Haffey as mortgagor and the plaintiffs as mortgagee. This mortgage recited that Haffey was a resident of Princeton, Bureau County, Illinois, and was indebted to plaintiffs in the sum of $3007 and that the mortgage was executed for the purpose of securing the payment of that indebtedness according to the conditions of the $3007 note dated July 1, 1954, due January 1, 1956, payable $170 per month, interest included. By the provisions of this chattel mortgage, Haffey mortgaged to the mortgagees a new 1954 Buick automobile, fully describing it. This mortgage was duly acknowledged and filed for record in the office of the Recorder of Deeds of Bureau County on July 3, 1954.

Upon the delivery of the $3007 note of July 1, 1954, to the bank and the delivery of the chattel mortgage to the plaintiffs, the bank cancelled the $700 note, dated June 24, 1954, and issued its cashier's check for $2137.50 payable to the order of the Fager Buick Company of Princeton, Illinois, and delivered the cashier's check to Haffey, who, in turn, delivered it to the Fager Buick Company. The Fager Buick Company accepted the check in full payment of the Buick automobile described in the chattel mortgage, Haffey having theretofore made a payment thereon in the sum of $600.

On or about August 1, 1954, the defendant, Jack Levisey, purchased the automobile from Haffey, paying him $1200 therefor. On August 5, 1954, Haffey paid the bank $170, which was duly credited by the bank on the note. Three weeks later Levisey sold the automobile to Chris Sears of Princeton for $2500 and Haffey

left the state, and plaintiffs have been unable to locate either him or the automobile.

On December 11, 1954, the instant complaint was filed by Arlie Love and Ethel Love, the mortgagees, against Jack Levisey. The complaint consists of two counts. One is entitled "Separate Action in Chancery" and alleges that on July 1, 1954, the plaintiffs loaned to Haffey, a resident of Bureau County, $3007, who thereupon executed and delivered to them a promissory note for that sum with 4% interest, which note was secured by a chattel mortgage upon a described Buick automobile; that on July 3, 1954, the mortgage was duly filed in the office of Recorder of Deeds of Bureau County; that about August 1, 1954, Haffey sold the automobile to Levisey without the consent of the plaintiffs and thereupon left the state and his whereabouts is unknown to the plaintiffs; that thereafter Levisey sold the car to a used-car dealer in Princeton and received, therefor, $2500. This count prayed that this sum be impressed with a trust in favor of the plaintiffs and that defendant be ordered to pay plaintiffs this amount.

The second count was entitled: "Separate Action at Law" and made the same allegations with reference to the execution and delivery of the $3007 note by Haffey to plaintiffs, which note, it was alleged, was secured by a chattel mortgage on the described Buick automobile; that the chattel mortgage was duly filed for record on July 3, 1954; that Haffey sold the automobile on August 1, 1954, to Levisey, who, in turn, sold it to a used-car dealer, receiving therefor, $2500; that Haffey left the state; that the value of the automobile was in excess of $3000 and, by this count, plaintiffs demanded judgment against the defendant for that sum.

The answer of the defendant denied each and every allegation of the complaint. The issues thus made were submitted to the court for determination upon a stipu-

lation of facts as above narrated, resulting in a finding and judgment for the defendant in bar of the action and that the plaintiffs take nothing by their suit. To reverse this judgment, plaintiffs appeal.

■ Counsel for appellee call our attention to the allegations in both counts of the complaint to the effect that plaintiffs loaned Haffey $3007 on July 1, 1954, and that Haffey thereupon executed and delivered to plaintiffs a promissory note for that sum, which note was secured by a chattel mortgage upon the described Buick automobile. Counsel state these allegations were denied by defendant's answer and the facts, as stipulated, are that Haffey did not borrow any money from the plaintiffs, but from the Tampico Bank; that Haffey did not execute or deliver any note to the plaintiffs, but the note was delivered to the bank and that the note delivered to the bank was not secured by a chattel mortgage and argue that it is a fundamental rule that a plaintiff must recover on the case made by his pleadings; citing Fornoff v. Smith, 281 Ill. App. 232, 236; McFarland v. Town of Bourbonnais, 339 Ill. App. 328, 333; and, Feder v. Midland Casualty Company, 316 Ill. 552; and plaintiffs, having failed to prove these allegations of their complaint, the judgment of the trial court should be affirmed.

Counsel for appellants concede this rule to be correct, but insist that it has no application here; first, because this question of variance was not raised in the trial court and cannot be argued for the first time on appeal; second, because the reason why a plaintiff must state facts constituting his cause of action and upon which he relies to recover is to enable the defendant to prepare his defense and prevent the defendant being taken by surprise by the evidence offered and in the instant case there is no element of surprise as no objection to any evidence was ever made in the trial court, but the parties stipulated all the facts and;

third, after this question was first raised in this court by appellee's brief, filed on September 17, 1956, appellants, on September 26, 1956, filed in this court, in accordance with Rule 25 of this court, their motion for leave to amend paragraph one of each count of their complaint to read as follows, viz.: "That on the 1st day of July, 1954, one James F. Haffey borrowed the sum of $3007 from the Tampico National Bank of Tampico, Illinois and executed and delivered to said bank his note in that amount; that plaintiffs co-signed said note; that as a part of said transaction, said Haffey executed and delivered to plaintiffs a chattel mortgage, mortgaging a 1954 Buick automobile, Serial No. 6a1102455." No suggestions in opposition to this motion were filed by appellee and the motion to amend was taken with the case.

What this amendment does is to conform the pleadings to the proof. This is expressly authorized by the Civil Practice Act, which provides that in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, exercise all or any of the powers of amendment as the trial court. (Ill. Rev. Stat. 1955, chap. 110, sec. 92 (1) (a)).

We are not unmindful of the fact that the jurisdiction this court exercises is appellate and our review is of the record made in the trial court. It is difficult to understand why counsel, who prepared this complaint, would stipulate to facts at variance with its allegations and, having done so, would take no steps to make the pleadings conform to the facts until the variance was called to the attention of counsel by the argument filed in this court on behalf of appellee. It was not incumbent upon counsel for defendant in the lower court to call this matter to the attention of opposite counsel. However, the proposed amendment conforms the pleadings to the proof. Appellee makes no objection to the allowance of appellants' motion to so

536

amend the complaint. In furtherance of the proper administration of justice and being expressly authorized by our Civil Practice Act and Rule 26 of this court, the motion for leave to amend is sustained and we shall treat the complaint as so amended.

Counsel for appellee state that this transaction was a peculiar one, that the note given to the Tampico Bank was not the note secured by this chattel mortgage and that the mortgage failed to describe the obligation secured by it and is, therefore, fictitious and fraudulent as to appellee. In support of this contention counsel cite and rely upon John Deere Plow Co. v. Hershbarger, 260 Ill. App. 227, and Morris v. Robert Tillson, 81 Ill. 607.

The chattel mortgages involved in the Hershbarger case recited that they were given to secure a note executed by G. W. Burnett to S. E. Dillavou and assigned to the John Deere Plow Company of Moline, Illinois. The stipulated facts were that Burnett executed a note payable to Busey's State Bank and that the indebtedness evidenced by that note was the indebtedness of Burnett to that bank and that the note was, at the time of its execution, and at all times since, in the possession of and owned by Busey's State Bank. What the court held was that, so far as this note was concerned, the chattel mortgages were fictitious and including it in the mortgages under a false statement of facts was a constructive fraud upon the creditors of Burnett. The fraud in that case consisted of the fact that there was no debt in the amount indicated by the mortgages to the mortgagee, John Deere Plow Company, while the mortgage recited that there was. In the instant case, the mortgagor executed and delivered the mortgage to the mortgagees. It recited that the mortgagor was indebted to the mortgagees in the sum of $3007 and that the mortgage was executed for the purpose of securing the payment of that indebted-

ness according to the terms and conditions of the note for that sum, dated July 1, 1954, due January 1, 1956, and payable at the rate of $170 per month. There were no false allegations in the mortgage which the mortgagor executed. It does not name the payee of the note, nor set forth any fictitious obligation. It was given to secure the payment of an indebtedness. The mortgagor's indebtedness to the mortgagees was contingent, it is true, but it was an indebtedness.

In Schweer v. Schwabacher, 17 Ill. App. 78, at page 80, it is said that a mortgage is good without any note and if a bona fide debt exists and that debt is sufficiently described in the mortgage to protect creditors and third parties from being misled, it is sufficient. In 14 C.J.S. Chattel Mortgages, sec. 37, p. 644, it is stated that a chattel mortgage may be given to secure an unliquidated debt and that the debt need not be evidenced by a note and section 40 of the same article states that a mortgage may be given for the purpose of indemnifying another against a future and contingent liability such as to secure the mortgagor's endorsee, surety or co-surety. In the instant case this mortgage was given to secure the co-signers of a note which evidenced, as between the signers of the note, the sole indebtedness of the mortgagor.

In Southern Surety Company v. Peoples State Bank, 332 Ill. 362, 365, the court cited with approval and quoted from Goodheart v. Johnson, 88 Ill. 58, where it was held that if a chattel mortgage was in truth and in good faith given to secure against a contingent liability as surety, the latter would be a good consideration and sufficient to sustain the mortgage and if the mortgagee had not in fact paid the debts for which he was surety, if he would have them to pay, he would be entitled to hold the mortgaged property or its proceeds to apply to the payment of such debts.

Morris v. Tillson, 81 Ill. 607, also cited and relied upon by appellee is inapplicable. What the court said

538

and held in that case was that a chattel mortgage could not be so extended as to become a lien for an indebtedness other and different than that described in and professed to be secured by the mortgage.

 In the instant case, the mortgagor's obligation to the mortgagees was contingent upon the mortgagor's failure to pay the bank his note of $3007 as he had promised and obligated himself to do. His obligation, as between himself and the Loves, became fixed and determined when he defaulted in his payments to the Tampico Bank as provided in the note evidencing his indebtedness to the bank upon which note the mortgagees were co-signers. The filing or recordation of the mortgage gave constructive notice of its existence and its recitals were sufficient to put anyone interested upon inquiry, which inquiry, would have led to the discovery of the existence of the claim of the mortgagees. The subsequent sale of the chattel must, therefore, be held to be subject to the lien acquired by the mortgagees. (Schillo v. White, 207 Ill. App. 390, 392; Ill. Law and Practice, Vol. 8, p. 239, Title, Chattel Mortgages, sec. 209.)

Appellee's defense is predicated upon the fact that he did not know of the existence of this chattel mortgage and his counsel argue that he exercised every precaution within his knowledge to protect himself in his transaction with Haffey, the mortgagor. Counsel call our attention to that part of the stipulation which discloses that the certificate of title, which appellee received from Haffey, did not show any lien upon this automobile and that appellee's wife drove to Springfield and checked with the office of the Secretary of State in order to ascertain whether the certificate of title was valid, interviewed the Fager Buick Company, and ascertained that the car was paid for by a cashier's check, issued by the Tampico National Bank and then went to the bank and was unable to locate anyone familiar with the transaction.

539

What all this shows is that appellee did everything except the one thing which the law required and which would have given him the information he needed. Had he gone to the office of the Recorder of Deeds of Bureau County, he would have learned that Haffey, the party with whom he was dealing, had executed a chattel mortgage upon this automobile, which appellee was contemplating purchasing just a month before to secure an indebtedness of $3007. His counsel state that obviously appellee realized he was making a good deal when he paid $1200 for a car only a month old and which cost more than $2800, but insist that appellee never consciously attempted to defraud the plaintiffs. That appellee apparently did make a good deal is evidenced by the fact that in less than three weeks after he bought this car from Haffey, he, appellee, sold it for $2500. Could it be that the reason he neglected to examine the records at the Recorder's Office was the anticipation of realizing just this profit?

We hold that the chattel mortgage held by appellants was a valid lien upon the automobile described therein at the time appellee acquired that automobile and at the time he disposed of it for $2500. This necessitates a reversal of the judgment of the circuit court and this cause is remanded to that court with directions to proceed in accordance with the views expressed herein.

Judgment reversed and cause remanded with directions.

CROW and EOVALDI, JJ., concur.