(No. 34446.—

DRAGINJA SAVICH, Appellant, *vs.* MIOMIR SAVICH,
Appellee.

*Opinion filed Nov. 20, 1957—Rehearing denied Jan. 20, 1958.*

Mary C. Perisin, and Ruth Thornquist, both of Chicago, for appellant.

Branko M. Steiner, and Donald J. Berman, both of Chicago, for appellee.

Mr. Justice Bristow delivered the opinion of the court:

This a direct appeal by plaintiff, Draginja Savich, from a divorce decree entered by the superior court of Cook County, and involves the propriety of the court's disposition of a certain freehold estate, and its denial of the motion to withdraw submitted by plaintiff's counsel.

From the record it appears that when the cause was called for trial, the attorney appearing for plaintiff asked to withdraw on the ground that plaintiff had discharged him, and no longer wanted him to represent her. The court denied the motion and directed the attorney to proceed with his direct examination, stating that the cause had been continued twice before and that plaintiff had not appeared on either occasion. When counsel asked plaintiff the preliminary questions of name and address, she turned to the court and explained that she spoke English poorly, and asked if the man questioning her was her lawyer. When told that he was, plaintiff refused to answer his questions, stating that she did not trust him, and that he had never

talked to her about the case. She repeatedly asked for Mr. Kelly, the attorney she had requested to represent her, who was also present in the courtroom. Notwithstanding the assurances by the court that she would get a fair trial, plaintiff refused to answer counsel's questions until directed to do so by the court. The court told her original counsel that if plaintiff would not answer him, the court would question her. When asked by the court if she had any witnesses, plaintiff replied that she had, but had not been told to bring them.

Although the divorce was contested, defendant offered no testimony to sustain the allegations of his counterclaim, nor did he deny the acts of alleged cruelty, or the fact that he deserted plaintiff, and cross-examination of plaintiff concerned only the property and financial status of plaintiff.

From the testimony of plaintiff and defendant, the latter having been called as an adverse witness, it appears that after some four years of marriage, defendant left plaintiff and had remained away some 17 to 19 months prior to the time of trial, and that during the course of the marriage defendant had struck plaintiff on numerous specified occasions. Approximately two months before defendant left plaintiff, the parties purchased, in join tenancy, an eight- or nine-room house for some $18,500, for which they executed a mortgage of over $12,000 and made a down payment of about $5,000, of which $3,820 was borrowed from various sources. After defendant's departure, plaintiff continued to reside in the house, and rented rooms, from which she received varying sums of $35 to $50 a week. She also held an outside job and her income from the rentals and outside work appears to have been between $120 and $200 a month. From this sum she paid the mortgage, taxes and insurance, and maintenance, and purchased some furniture during the 19 months. Defendant gave her no money whatsoever, although there is evidence that he made some payments on the debt incurred for the down payment. His

earnings during that time amounted to either $74 or $95 a week; the record is not clear on this point.

The court found that plaintiff was entitled to a divorce on the ground of defendant's cruelty, and, after stating that it was anxious to provide plaintiff with a roof over her head and to divide the property fifty-fifty, "down the middle," the court decreed that in lieu of alimony defendant convey his interest in the property to plaintiff, and that she pay defendant the sum of $4,000 in monthly installments of $54.68, which included interest of 4 per cent, and give defendant a junior mortgage and note for this amount. The court reserved jurisdiction to effectuate the settlement or to sell the property, if plaintiff failed to comply with the terms of the decree.

Plaintiff, believing that the decree did not represent the avowed intention of the court to divide the property fifty-fifty, filed a petition to vacate or modify the decree, emphasizing that the decree gave defendant all of the money he put into the property, in addition to half of their equity, and not only deprived plaintiff of all alimony, even though she was not the party at fault, but failed to include in the computation of defendant's share, plaintiff's contribution to the equity, both originally and for the 19 months after defendant left, when she paid the mortgage and improved the premises with her own earnings. The court denied plaintiff's petition, and she has prosecuted this direct appeal from that ruling and from the original decree, and the ruling on the withdrawal motion. Inasmuch as a freehold is involved, our jurisdiction is properly invoked on direct appeal.

In determining first whether the court erred in denying the motion to withdraw by plaintiff's attorney, after his client had dismissed him, we recognize the established right of a party to discharge his attorney at any time with or without cause, and to substitute other counsel, for a client is entitled to be represented by an attorney in whose ability

and fidelity he has confidence. *Stone* v. *Baldwin*, 331 Ill. App. 421, 425; *Regan* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 204 Ill. App. 115; *Conlan* v. *Sullivan*, 280 Ill. App. 332; *Pressney* v. *Pressney*, 339 Ill. App. 371; *People* v. *Franklin*, 415 Ill. 514; 7 C.J.S. 941.

In the *Pressney case* the court stated at page 374: "Upon termination of the relation of attorney and client the latter has the right to substitute another for the person discharged, and the court cannot rightly continue a discharged lawyer as attorney or solicitor of record against the will of the client."

Although the rule is articulated mostly in suits involving attorney fees, in the *Franklin case* the court reiterated the rule in a case involving the issue of whether the client's rights were prejudiced by having to proceed with counsel whose motion to withdraw was denied. In determining that the trial court did not abuse its discretion in denying the motion, the court stressed that the record was barren of any showing that defendant sought, or was ever denied the right to substitute counsel; that while defendant had contacted another attorney by telephone, he made no further effort at substitution; that defendant acquiesced in the court's ruling on the motion, and accepted counsel's services without objection; that no effort to withdraw was made until after the jury was assembled; and that the original counsel conducted a full and complete defense in an able manner, showing his familiarity with such proceedings.

The legitimate implication from the analysis and factors stressed by the court in the *Franklin case* is that under the circumstances herein a denial of the motion to withdraw would constitute an abuse of discretion. In sharp contrast, plaintiff herein made a vigorous attempt to discharge her attorney, and even had substitute counsel in court; plaintiff refused, even after assurances of a fair trial by the court, to answer counsel's questions or proceed with the cause until ordered to do so by the court, and then con-

tinually asked for the attorney of her choice. Moreover, unlike the *Franklin case,* where the client was in no way prejudiced by the retention of the original counsel, in the instant case plaintiff was prejudiced by having to proceed with original counsel, since he had not consulted with her about the case, nor instructed her to bring witnesses, and failed to elicit precise information respecting defendant's earnings and plaintiff's contribution to their equity in the property, both before and after separation, which data was material to an equitable property settlement. Therefore, in view of plaintiff's right to be represented by counsel of her choice, the denial of the motion by plaintiff's counsel to withdraw under the circumstances herein amounted to an abuse of discretion, which constituted reversible error.

In considering next the propriety of the trial court's division of the property, we are cognizant that a wife granted a divorce for the misconduct of the husband is entitled to alimony, in the absence of special circumstances, and that this right, arising out of the marital relation, is founded upon the legal duty of the husband to support his wife, which is not removed by a divorce obtained for his misconduct. (*Darnell* v. *Darnell,* 212 Ill. App. 601; *Herrick* v. *Herrick,* 319 Ill. 146, 151; *Walters* v. *Walters,* 341 Ill. App. 561; *Gercke* v. *Gercke,* 331 Ill. 413, 419.) Furthermore, under section 18 of the Divorce Act, (Ill. Rev. Stat. 1955, chap. 40, par. 19,) a court may order a husband to convey to his wife real property as settlement in lieu of alimony. This provision, however, is distinct from the power of the court to settle and divide the property rights of the parties, including property held in joint tenancy, under section 17 of the Divorce Act. *Cross* v. *Cross,* 2 Ill.2d 104.

The trial court herein, after determining that plaintiff was entitled to a divorce, asked her if she wanted alimony, and she personally replied, "The best way, which in my opinion, if I may tell you, that is to make settlement of the house." Thereafter, the matter of alimony became

intertwined with the division of the property, which was made in lieu of alimony.

In ascertaining plaintiff's property rights, it is evident that irrespective of alimony, plaintiff had a half interest in the property held in joint tenancy, since the fact that a husband purchased property placed in joint tenancy with his wife does not make him the equitable owner of her interest, and a gift of her half is presumed. (*Baker* v. *Baker*, 412 Ill. 511.) Moreover, in the instant case there is evidence that at least part of the down payment for the property came from family savings, which constituted plaintiff's money as well as defendants, and that for 19 months after defendant left her, plaintiff paid the mortgage, taxes, insurance on the property, and improved it substantially, thereby increasing their equity in it. Thus, if plaintiff had sought a partition of the premises, to which she would have been entitled as a matter of right (*Van Dolman* v. *Van Dolman*, 378 Ill. 98,) and which would in no way have impaired her additional right to alimony, a court would properly have taken cognizance not only of the portion that was a gift to plaintiff, but of her contribution through her savings and sole earnings.

In the instant case, however, the court kept the fee intact, apparently to protect plaintiff and give her a roof over her head, but failed to consider any of those factors in computing the amount plaintiff had to pay defendant for his share. The court, in ordering plaintiff to pay defendant over $4,000 plus interest, took cognizance only of the amount defendant allegedly borrowed for the down payment in computing his share of the equity and entirely overlooked plaintiff's contribution to the equity. Moreover, although defendant claimed he borrowed $5,000, the entire down payment on the property was only $5,000, some of which was paid from family savings and the sums borrowed amounted at most to $3,820. It is not clear from the record, furthermore, whose obligations these were, or

whether they have already been paid in full.

In computing the share of the parties, it appears that the value of the property was deemed to be $18,500, the purchase price, and that at the time of the trial the mortgage was approximately $12,145, so that the parties then had a joint equity of about $6,355, or an individual equity of $3,177.57. Nevertheless, defendant was awarded $4,000 plus interest and a junior mortgage, and was not required to pay one cent of alimony to plaintiff, notwithstanding the fact that he was the party at fault, and plaintiff was merely given the total equity minus $4,000, or an amount less than her individual equity apart from alimony.

Defendant, however, is not satisfied even with this disproportionate share, but claims in addition that he has been unjustly deprived of his share of the rental of the rooms which plaintiff received during the period between his desertion and the trial, and that plaintiff should have been required to pay him rent, although he waives an accounting which would reveal plaintiff's expenses during that period. Inasmuch as defendant gave plaintiff no money whatsoever after he walked out, and she had to maintain the premises, operate the rooming house, and make all requisite payments from her own earnings, defendant's claims must have been made with tongue in cheek. Nor is his claim of being penniless substantiated by the record, since the only evidence on the issue indicates that his salary is at least $74 a week, and it is not clear how much, if anything, is being paid off on the alleged debts.

In our judgment, furthermore, even if defendant were still paying on those loans made for the down payment, which is by no means clear from the record, and if the trial court ordered him to convey his half interest to plaintiff in lieu of alimony and had not even required plaintiff to pay for it, the trial court would in effect only be making a settlement in lieu of alimony under which defendant would be in no different position than any husband contributing

to the support of his wife, except that his obligation would end at a certain time—when the borrowed sums were paid. Such an arrangement would constitute a settlement in lieu of alimony, in contrast to the decree which not only deprived plaintiff of alimony without cause, but failed to give plaintiff her rightful share of the property held in joint tenancy, as contemplated under section 17 of the Divorce Act.

Consequently, the division made by the decree of the trial court constituted an abuse of discretion which, together with the erroneous denial of the motion to withdraw by plaintiff's counsel, warrants reversal, on the question of alimony and the cause must be remanded to the trial court for further hearing on that issue.

*Reversed and remanded.*