Carolyn Kijowski, Plaintiff-Appellee, v. Henry Kijow-
ski, Defendant-Appellant.

Gen. No. 48,309.

First District, First Division.

June 4, 1962.

Louis Z. Grant, of Chicago, for appellant.

LaRocque & Jones, of Chicago (Paul A. LaRocque, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Defendant appeals from a decree of divorce, on the grounds of cruelty, entered after a contested trial.

On oral argument defendant raised a question (not covered in his brief) as to the jurisdiction of the trial court. We consider that, because of its character, this point was timely, even though made at so late an hour, and we shall give it first consideration.

Defendant contends that, while the complaint alleges that the parties are residents of Cook County, it does not allege that such residence had continued for a period of one year as required by the Divorce Act (Ill Rev Stats, c 40, § 3) and that the court, therefore, lacked jurisdiction.

It is true that the language of the statute establishes certain residence requirements as a condition to jurisdiction, but plaintiff's failure to allege the duration of residence is not fatal if the record discloses that the necessary residence facts actually existed. And it does.

There is undisputed testimony by plaintiff that the parties lived in Chicago continuously from the date of their marriage in 1953 until after the date of the last-alleged act of cruelty in 1959, and that plaintiff had resided in Cook County for more than one year prior to the filing of her complaint. This evidence is corroborated by facts appearing in defendant's sworn answer to the complaint.

There is, thus, ample support in the record for the finding in the decree that "the Plaintiff has been, prior to the filing of her Complaint for Divorce in the above entitled cause, an actual resident of Cook County, Illinois for more than one year."

It would have been better practice to have amended the complaint in the trial court to conform it to the proofs on so important a point, but that may

96

also be done in this court, and we shall consider the amendment as having been made on our own motion. (Ill Rev Stats, c 110, §§ 46, 92(1)(a); Appellate Court Rule 26; Love v. Levisey, 11 Ill App2d 531, 137 NE 2d 869.

The purpose of the amendment is not to create a cause of action by the addition of a jurisdictional fact, but merely, by proper allegation, to show that a cause of action of which the court had jurisdiction, really existed. As stated by this court in Plotnitsky v. Plotnitsky, 241 Ill App 166, 171–2:

> "The proceeding here was not void; it did not affirmatively appear that there was no cause of action. The defect in the bill was simply in a failure to aver a material jurisdictional fact required by the statute. Had the bill affirmatively stated facts showing that the court where the bill was filed could not acquire jurisdiction, a different question would be presented."

■ Defendant's primary point on this appeal questions the sufficiency of both allegation and proof of the grounds for divorce, namely, extreme and repeated cruelty. The complaint charges that defendant committed such acts of cruelty on February 4 and on January 1, 1959 "and many times prior thereto." Defendant's answer denied that he was guilty of cruelty to plaintiff "at any time since the marriage."

Plaintiff testified that: on February 4, 1959 defendant beat her with the blade, the side, of his hand and with his fist; he struck her head, her face, her neck, arms and legs; she experienced pain and had large bruises on her arms, legs and hips; her wrists were twisted and swollen; he grabbed her by the hair; he held both wrists with one hand and then twisted her down to the floor; he then hit her with the blade of his hand and fist and when she flattened herself

out to protect her hips he drove his knee into her stomach hard. The marks on her body lasted almost two weeks.

Mrs. Guither testified in corroboration that when she saw plaintiff six days later she was limping, had marks on her wrists, and was extremely fearful and nervous.

Plaintiff further testified that: on January 1, 1959 her husband beat her with the hard side of his hand, his fist and his knee; he struck her face, neck, wrists, arms, hips and legs; his nails cut her wrists; she was afraid, suffered pain and cried; her hair was dishevelled, her face was red and swollen and so also were her neck, arms and wrists.

Reverend Francis Guither, the Minister who had married plaintiff and defendant, testified that: he saw plaintiff at her home about 1:00 p. m. on January 1, 1959 and noticed that plaintiff was bedraggled, her hair was messed up, her face was red and swollen; her wrists were red; she wept a great deal.

Plaintiff also testified to acts of cruelty committed on her person by defendant on June 19, 1958 and again during Christmas week of 1958. On these occasions she sustained injuries to her foot and to her chest and abdomen.

Mrs. Wilson testified as an eye-witness to both of these acts. Mr. Wilson testified as an eye-witness to the December occurrence and as to the injury upon arriving at the scene momentarily after the occurrence in June. Mrs. Mitrega testified to having seen plaintiff's bruises shortly after the December occurrence.

On the basis of this record the chancellor found in his decree that defendant had been guilty of acts of cruelty on all four dates. We see no error in this conclusion, and find it fully justified on both the pleadings and the evidence.

Defendant next contends that the decretal award of a $7,500 joint (plaintiff and defendant) bank ac-

count to plaintiff was not authorized in the absence of a special averment in the complaint asserting special circumstances as basis for a claim thereto. Cases cited are those arising under Section 17 of the Divorce Act. (Ill Rev Stats, c 40, § 18; Persico v. Persico, 409 Ill 608, 100 NE2d 904; Podgornik v. Podgornik, 392 Ill 124, 63 NE2d 715; Bissett v. Bissett, 375 Ill 551, 31 NE2d 955.) We believe that the principle for which those cases stand is not applicable here.

The complaint did allege that defendant had threatened to dissipate assets then standing in the joint names of plaintiff and defendant, and there was a general prayer for relief.

The undisputed facts are that: plaintiff was employed as a nurse in various hospitals during most all of her married life; she worked until five days before the birth of her first son, and until she was seven months pregnant with her second son; and during the entire time she endorsed each of her pay checks to defendant. Thus, in a very specific way, her earnings are traceable into the joint bank accounts of the parties. At the time of commencement of this suit there were two such joint bank accounts and the balance in each was approximately $7,500.

■■ Having determined, properly, we think, that an even division of the accounts was equitable, the chancellor then could have awarded half of each bank account to each party, or, as seems more practical, he could have done what he did in awarding one account to each party. This did not, in reality, involve the conveyance of title to property from one holding legal title to another equitably entitled thereto under Section 17. It was merely a sensible division of joint property in accordance with the interest of each. Plaintiff was deprived of her interest in the joint account awarded to defendant, and vice versa. Defendant seems to assume that, had this not been done, he would have been entitled to both accounts

as his exclusive property. But such would not have been the case. The accounts would have remained joint and would have required further court determination of the rights of the parties in order to prevent a race to the bank, with all the funds going to the winner. The same situation would result from a reversal of the part of the decree dealing with the bank accounts. We believe the matter has been fully and fairly litigated and requires no further inquiry by a trial court.

██ After all of plaintiff's case had been presented, and defendant had testified in his own behalf, defendant discharged his attorney. He now contends that he was allowed inadequate time to procure his new counsel who appeared for closing arguments, and has selected, out of context, some remarks of the trial judge in this regard as demonstrating a prejudicial attitude toward defendant. The full record speaks to the contrary. We believe the chancellor's admonitions on this point were proper; he was extremely patient with defendant's difficult behavior throughout the trial; and, under all the circumstances, he gave defendant ample time to obtain a substitute attorney.

Finally, it is contended by defendant that there is insufficient justification for the award of a $2,000 fee to plaintiff's attorney. Point is made that it was substantiated, not by testimony, but only by unverified statements of the attorney as to the nature and extent of the services he had performed.

██ The allowance of fees in divorce proceedings "rests in the sound discretion of the trial court, and, unless such discretion is clearly abused, its exercise will not be interfered with." (Ylonen v. Ylonen, 2 Ill2d 111, 121, 117 NE2d 98.)

██ The earlier cases seem to emphasize the need for evidentiary support for the awarding of fees. (Czarnecki v. Czarnecki, 341 Ill 629, 173 NE 752; Bar-

ton v. Barton, 323 Ill App 357, 55 NE2d 542; Gelbach v. Gelbach, 219 Ill App 503.) More recently, however, it has been held that, in the absence of a request for the hearing of evidence, the chancellor may base an award on the financial circumstances of the parties as shown by the record, statements of counsel as to necessary services, and the chancellor's own experience. (Moore v. Moore, 25 Ill App2d 255, 166 NE2d 629.) There was no request for the taking of testimony as to fees in the case at bar.

 While it was not raised conditionally, it would appear that defendant's point as to fees must fall with our determination that the court properly awarded one of the joint bank accounts to plaintiff. This is a necessary result because the decree specifically makes the fee allowed to plaintiff's attorney a charge against the bank account awarded to plaintiff. The fee is, therefore, not to be paid by defendant and his objection has no standing under the circumstances.

The judgment of the Superior Court is affirmed.

Affirmed.

MURPHY, P. J., concurs.

BURMAN, J., dissenting:

I think this matter should be reversed and remanded for a new trial. A careful examination of the record reveals to me that the granting of divorce and other relief was at variance with the pleadings to a degree which should not be condoned by this court, and that defendant was not given fully his day in court.

The complaint alleged acts of physical cruelty which were supposed to have taken place on two specified dates. The decree was based upon findings of cruelty which took place on those two and numerous

other dates. Aside from the sufficiency of the evidence relating to the other occasions, I found the evidence concerning the dates specifically alleged to be of doubtful sufficiency.

> It is a primary rule, always enforced and sustained by numberless decisions, that the allegations of the bill, the proof and the decree must correspond; that facts disclosed by the evidence which would warrant relief will not sustain a decree where the facts are not alleged in the bill. (Citation omitted.) (Higgins v. Higgins, 219 Ill 146, 153, 76 NE 86.)

I do not feel that defendant was properly informed by specific averments in the complaint, as he has the right to be, of the charges he was expected to meet at trial. Moreover, plaintiff did not at any time attempt to amend the pleadings. I consider this error in a contested divorce proceeding too serious to be overlooked.

This divorce hearing was begun on Friday, February 5, 1960, and at the end of the day, and on his own motion, the trial judge recessed the trial until the afternoon of Tuesday, February 9, 1960. On the latter date, at the beginning of proceedings, the defendant told the trial judge he was discharging his attorney. That attorney, who was then present, willingly bowed out of the case. Stating that he was not seeking a new trial and was willing to proceed from that point in the trial, defendant asked for a reasonable continuance for the purpose of obtaining new counsel. Plaintiff's counsel objected and stated that he was going to move for a decree on the evidence as it had been heard to that point. To this the trial judge replied that the point was well taken. During the ensuing discussion the trial judge continually criticized the defendant and advised: "you are in a

rut, and you're getting deeper every minute. If you want to reconsider, I'll give you ten minutes, and you can go out and get Mr. Hulbert and get on with this." The court evidently was attempting to compel defendant to rehire his attorney.

Defendant was given a few minutes during which he tried to locate a new attorney. When he returned to the courtroom he informed the trial judge that he was expecting some phone calls to come through but that he did not yet have an attorney to represent him. The trial judge thereupon required defendant to proceed with the presentation of virtually his entire defense pro se.

The defendant proceeded to call witnesses who, in most instances, had been plaintiff's witnesses. Time and again the court sustained objections to the questions defendant propounded. Obviously defendant was not in a position to know how properly to ask questions and present his side of the case. Instead of being lenient the trial judge simply warned defendant that it was detrimental to his cause to call plaintiff's witnesses as his own, and said: "I have admonished you previously and continuously Mr. Kijowski, that you are digging yourself deeper and deeper into the mire."

It is the established rule that a litigant has the right to discharge his attorney at any time with or without cause. (People v. Franklin, 425 Ill 514, 516, 114 NE2d 661; Savich v. Savich, 12 Ill2d 454, 147 NE2d 85.) I realize that the trial court has in its discretion the power to deny a party the right to substitute attorneys where such conduct would unduly prejudice the other party or interfere with the administration of justice. I conclude, however, that to deny defendant that right here was an abuse of discretion which prevented defendant from presenting his evidence. I think the trial court was disturbed by the unusual situation and in-

advertently became prejudiced against the defendant. It must be remembered that this was a bench trial and that the court in the first instance and of its own initiative continued the hearing for several days. I fail to see any reason why the court would have been greatly inconvenienced, or the plaintiff prejudiced, by the granting of another short continuance. I think plaintiff should have been given leave to amend her complaint and defendant given reasonable time to answer and be properly represented by counsel.

It seems to me that the lack of fairness in this case extends also to its monetary aspects. The evidence does not indicate to me that plaintiff was entitled to the entire balance in one of the joint bank accounts, and especially is this true since she did not seek such relief by specific allegation in the complaint. (Ward v. Sampson, 395 Ill 353, 365, 70 NE2d 324.) Moreover, the allowance of alimony to the plaintiff was improper in view of the fact that she earns sufficient money to maintain herself (the evidence showed, and the decree found, that plaintiff is earning at least $50 per week), and in view of the fact that the combination of alimony and child support requires defendant to pay total sums entirely out of proportion to his take home pay.

Finally, the allowance of attorney's fees in the amount of $2,000 was excessive and out of proportion to the assets of the parties and their earnings. The matter of fees was brought out by plaintiff's counsel only in final argument and he explained his services in only a general way. This may be satisfactory where an attorney is requesting just the usual minimum fee. Where, however, a large fee is sought, as in the instant case, sworn evidence and strict proof is required to show the reasonableness thereof. (Czarnecki v. Czarnecki, 341 Ill 629, 173 NE 752.) The record here reveals that the judge arrived at the allowed figure quite arbitrarily.