ELIZABETH J. HAYMOND, Plaintiff-Appellee, *v.* THOMAS A. HAYMOND, Defendant-Appellant.

Second District   No. 77-247

Opinion filed June 13, 1978.

Francis X. Mahoney, of Nettles, Mahoney & Mahoney, of Freeport, for appellant.

James G. Madden, of Freeport, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Thomas A. Haymond appeals from an order confirming certain prior orders which reduced arrearages and temporary support payments due his former wife, Elizabeth, under an earlier interlocutory order of the trial court, to judgment. He argues that (1) he was not amenable to process issued by a court of this State; (2) that the trial court lacked ancilliary jurisdiction to enforce its temporary support order, since another divorce action was pending between the parties in West Virginia; (3) that the trial court was not empowered to reduce "delinquent temporary alimony" to judgment, and (4) that the trial court erred in refusing to hear certain evidence, presented as a setoff against the judgments.

Thomas and Elizabeth Haymond were married in California in 1966. Shortly thereafter, they moved to Freeport, Illinois, where they lived until December of 1970, when they moved to West Virginia. They cohabited in West Virginia until December of 1972, when Elizabeth Haymond left her husband and returned to Illinois.

Early in 1974, Elizabeth Haymond filed a complaint for divorce in Stephenson County, Illinois. The complaint alleged that Thomas Haymond had been guilty of physical and mental cruelty, but did not allege where the acts had occurred. Thomas Haymond, who had continued to reside in West Virginia after his wife's departure, was personally served with summons in the Illinois divorce action, in Preston County, West Virginia, on February 15, 1974.

On April 9, 1974, Elizabeth Haymond filed a petition for temporary alimony; notice and a copy of the petition was mailed to Thomas Haymond in West Virginia. On May 7, 1974, the circuit court of

Stephenson County entered an order that Thomas Haymond pay Elizabeth Haymond $600 per month for "temporary support" during the pendency of the divorce proceeding. After Thomas Haymond failed to make the first of the $600 payments, Elizabeth Haymond filed a petition to hold him in contempt and reduce the arrearage to judgment. Although Thomas Haymond did not enter an appearance or contest the petition, the court held an evidentiary hearing; Elizabeth Haymond testified that in early 1967, Thomas Haymond struck her with his fist at the parties' marital home in Freeport, Illinois, and that such misconduct toward her was repeated on various occasions in Freeport during 1967 and 1968. After hearing testimony regarding Thomas Haymond's failure to make a $600 payment as required by the court's prior order, the court entered a judgment for $600 against Thomas Haymond.

On October 8, 1975, Thomas Haymond having failed to make any temporary support payments, Elizabeth Haymond filed a second petition to hold him in contempt and reduce the further arrearages to judgment. On October 30, 1975, the court entered an order reducing the arrearages (plus attorney fees) to a judgment against Thomas Haymond in the amount of $10,250.

The focus of the controversy then shifted to Preston County, West Virginia, where Thomas Haymond filed suit for divorce. Elizabeth Haymond appeared and contested this proceeding. She also filed an action in the same court to enforce the judgment for $600 which she had obtained in the Stephenson County divorce proceeding. Thomas Haymond filed an answer asserting that the Illinois judgment was not entitled to full faith and credit; he also filed a counterclaim, seeking, as a setoff, the amount of certain voluntary payments which he had made to Elizabeth Haymond, after the parties separated, and $9,000 which he alleged that Elizabeth Haymond had appropriated from a joint tenancy bank account of the parties at the Union Savings and Loan Association in Freeport, Illinois.

Elizabeth Haymond filed a motion for a summary judgment on her complaint and on Thomas Haymond's counterclaim, in the West Virginia action to enforce the $600 Illinois judgment. The West Virginia court, on March 15, 1976, in a thoughtful memorandum decision, held that the circuit court of Stephenson County had jurisdiction to enter both the order for temporary support and the order reducing the arrearages to judgment, and that the judgment was therefore entitled to full faith and credit. Although the court granted summary judgment on the complaint to enforce the $600 judgment, it denied Elizabeth Haymond's motion for summary judgment on Thomas Haymond's counterclaim, holding that "the case has not been sufficiently developed for the court to adjudicate the counterclaim at this time."

After a hearing on Thomas Haymond's complaint for divorce, the West Virginia court entered formal findings of fact, holding that Thomas Haymond had inflicted physical cruelty upon, and cruelly treated Elizabeth Haymond "all during the some six and one-half years of marital cohabitation of the parties," but that Thomas Haymond was entitled to a divorce in view of the two year separation of the parties. The court stated that it would award $300 per month to Elizabeth Haymond as alimony and concluded that "a decree may be prepared accordingly."

On March 31, 1976, Elizabeth Haymond again changed the focus of the litigation by filing yet another petition before the circuit court of Stephenson County to hold Thomas Haymond in contempt, and reduce the ever-increasing arrearages in payments due from Thomas Haymond under the temporary support order of May 7, 1974, to judgment. Thomas Haymond, for the first time, responded to the proceedings in the circuit court of Stephenson County, by filing a special appearance, asserting that the court lacked *in personam* jurisdiction. The court overruled the objections raised in the defendant's special appearance, holding that it had *in personam* jurisdiction pursuant to the Illinois long arm statute (Ill. Rev. Stat. 1975, ch. 110, pars. 16 and 17). Thomas Haymond then filed a motion to vacate the judgment entered on October 30, 1975, and for an order granting a "set-off" based upon the voluntary payments Thomas Haymond allegedly made to Elizabeth Haymond after the parties' separation, and upon the $9,000 deposited in the joint tenancy saving account in Freeport, which Elizabeth Haymond was alleged to have "effectively used" by borrowing against the account and then pledging it as security. The motion also asserted that Elizabeth Haymond had abandoned the Illinois action when she filed her appearance in the West Virginia divorce action. The court denied this motion, and entered an order reducing the arrearages, plus certain attorney fees incurred by Elizabeth Haymond, to yet another judgment against Thomas Haymond, this one in the amount of $3,570. The court subsequently entered an order "confirming" this judgment, and the prior judgments for $10,250 and $600, and denying Thomas Haymond's motion for a setoff, based upon the Union Savings and Loan account. Thomas Haymond appeals from this order and the underlying judgments.

■■ Thomas Haymond has filed a motion seeking an order amending the record on appeal to include an exemplified and authenticated copy of the final decree entered by the circuit court of Preston County, West Virginia, in the divorce action between these parties. Counsel for Elizabeth Haymond has objected to such an amendment, as untimely. The decree, which was entered on October 19, 1977, grants a divorce to Thomas Haymond, and awards Elizabeth Haymond $300 per month as alimony. In order to assure a complete disposition of the issues raised by this

appeal, we have determined to grant this motion, pursuant to our authority under Supreme Court Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366).

This complicated jurisdictional background presents a number of questions involving the construction and permissible scope of the Illinois "Long Arm" statute in force during the period in question, which in relevant part, provided as follows:

> "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> ❊ ❊ ❊
>
> (e) With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action." Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(e).

Perhaps the first point we should determine is the effect of Elizabeth Haymond's failure to allege, in her complaint for divorce, that the acts of physical and mental cruelty occurred in Illinois. The occurrence of these acts within this State constituted not only the grounds for divorce, but also formed the basis for the court's jurisdiction under section 17(1)(e). At the very least, good practice would have required an allegation that these jurisdictional acts occurred in Illinois. However, the record contains uncontradicted testimony by Mrs. Haymond regarding acts of cruelty in Freeport, Illinois, in 1967 and 1968, and the trial court made findings accordingly. Under these circumstances, and in view of Thomas Haymond's failure to raise any issue regarding the complaint's lack of any allegation that the conduct complained of occurred in Illinois, we do not feel that the defect was fatal. *Cf. Kijowski v. Kijowski* (1962), 36 Ill. App. 2d 94; *Chrastka v. Chrastka* (1971), 2 Ill. App. 3d 722 (involving complaints which omitted jurisdictional allegations of residence).

■■ Counsel for Thomas Haymond has presented the ingenious argument that the acts of cruelty which occurred in Freeport in 1967 and 1968 cannot form the basis for jurisdiction under the long arm statute, since those acts were condoned by the parties' subsequent cohabitation in West Virginia. In support of this argument, Thomas Haymond's brief cites a finding by the West Virginia court of "obvious" condonation in West Virginia, of the acts of cruelty that occurred in Illinois. However, the West Virginia court also found that "the subsequent acts of cruelty that occurred in West Virginia would be sufficient to revive any original

offense, including those in Illinois, and make them available as a grounds for divorce," and it is well established that "the conditional bar of condonation may be removed where subsequent misconduct is shown * * *." (*Quagliano v. Quagliano* (1968), 94 Ill. App. 2d 233, 241; *Jackson v. Jackson* (1975), 34 Ill. App. 3d 407.) There is thus nothing in the record that would justify a holding that condonation deprived the circuit court of Stephenson County of jurisdiction over this cause.

Since the doctrine of condonation did not require that the acts of misconduct which occurred in Illinois in 1967 and 1968 be ignored in determining whether the court had jurisdiction over the defendant, it would seem to be clear that the acts of cruelty in 1967 and 1968 constituted "the commission * * * of any act[s] giving rise to the cause of action"; that the cause of action "arose" at a time when the parties maintained a "marital domicile" in Freeport, Illinois, and that section 17(1)(e) clearly applied, conferring *in personam* jurisdiction over Thomas Haymond. Nonetheless, counsel has argued that the legislature could not have intended that the statute be applied to cases such as this one, where the parties "abandoned" their residence in Illinois and moved to another State, subsequent to the occurrences upon which the court's jurisdiction is sought to be based, and that any such construction of the statute would render it violative of the requirements of due process, and therefore unconstitutional.

A number of arguments have been advanced on behalf of Thomas Haymond, which cite potential problems, which, it is asserted, would arise if we construed section 17(1)(e) as conferring *in personam* jurisdiction in this case. Many of these arguments are, from the policy standpoint, not without merit. We note that section 17(1)(e) was amended by the legislature, effective October 1, 1977, so as to eliminate the words "at the time the cause of action arose" from the matrimonial domicile basis of jurisdiction, and to eliminate entirely the second basis for jurisdiction, "the commission in this State of any act giving rise to the cause of action." (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(e).) However, regardless of the legislative merits of the statute which existed prior to such amendment, we do not believe that the policy difficulties raised by counsel can be avoided by construing the statute as having no application where the parties moved from the State after the commission of the acts constituting grounds for divorce, and one of the parties then returned to the State, after the separation, since the plain meaning of section 17(1)(e) clearly indicates that the statute would apply in such an instance. (See *Farah v. Farah* (1975), 25 Ill. App. 3d 481.) Further, since it is well established that "[s]ections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause * * *" (*Nelson v. Miller*

(1957), 11 Ill. 2d 378, 389), the question of whether the statute was *intended* to be applied to confer jurisdiction in a case such as the one at bar is substantially the same as the question of whether the statute *may* be constitutionally applied in such case.

■■■ Was the Illinois court's exercise of *in personam* jurisdiction over Thomas Haymond constitutional? Under the famous case of *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158, *in personam* jurisdiction may be exercised over a nonresident defendant where he has such minimum contacts with the forum State that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " As the court noted in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 440, the requirements of due process as elicited in *International Shoe* are satisfied either if "the act or transaction sued on" occurs in Illinois, or "if defendant has engaged in a sufficiently substantial course of activity in the State, provided always that reasonable notice and opportunity to be heard are afforded." Here, while there are no cases in point (but *cf. Farah v. Farah*), it would seem clear that the maintenance of a marital domicile in Illinois during 4½ of the 6½ years that the Haymonds lived together as husband and wife, would constitute a "substantial course of activity in the State," and it is uncontradicted that the acts of cruelty which formed the grounds for divorce and thus, "the act or transaction sued on," occurred in Illinois. It is reasonable to assume that any third-party witnesses to Thomas Haymond's alleged acts of cruelty in 1967 and 1968 are more likely to be found in this State than any other. (*Cf. Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 443.) There can be no doubt but that Thomas Haymond was provided with reasonable notice and an opportunity to be heard, for " '[t]here would seem to be no better notice than a summons personally served on a defendant.' " (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 390.) Under these circumstances, we therefore hold that the application and effect of section 17(1)(e) in this case in rendering Thomas Haymond subject to the *in personam* jurisdiction of the circuit court of Stephenson County was not an unconstitutional violation of Thomas Haymond's due process rights.

■■ Thomas Haymond's final jurisdictional argument is that the court was deprived of ancilliary jurisdiction over matters of "temporary alimony" when Elizabeth Haymond "abandoned" the Illinois action by "submitting all the issues to the West Virginia court." There can be no question but that the simultaneous pendency of two divorce actions in different States, between these parties, presented an incongruous spectacle. However, no authority has been cited for the proposition that Thomas Haymond's filing of a divorce action in West Virginia, or Elizabeth Haymond's participation in that action, without more, deprived

the Illinois court (where the first action was filed) of jurisdiction. In fact, prior to the enactment of the Illinois Civil Practice Act, it was held that "it was no ground for the abatement of a proceeding in an Illinois court merely because another action was pending in a court of the United States or a sister State." (*Skolnick v. Martin* (1964), 32 Ill. 2d 55, 58, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562.) Section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(c)), now provides that a defendant may, within the time for pleadings, file a motion for dismissal on the ground that "there is another action pending between the same parties for the same cause," but no such motion was filed by Thomas Haymond. We thus can find no basis in the authorities for a holding that the pendency of the West Virginia divorce action automatically deprived the circuit court of Stephenson County of jurisdiction over the cause.

■■ Apart from these jurisdictional arguments, Thomas Haymond has contended that the court was not empowered to enter a judgment on an arrearage in "delinquent temporary alimony," but was instead limited to its contempt powers. This contention is erroneous; "an aggrieved party in a divorce case may adopt any legal or equitable power of the court to procure enforcement of its orders for the payment of money." 16A Ill. L. & Prac. *Divorce* §211 (1971); *cf. Hirsh v. Hirsh* (1967), 81 Ill. App. 2d 354 (wherein this court approved a reduction of an arrearage in temporary support to judgment, in the context of an action for separate maintenance).

■■ Finally, Thomas Haymond asserts that the trial court erred in refusing to allow him to introduce evidence regarding Mrs. Haymond's alleged appropriation of the Freeport savings account of the parties, and certain other matters, as a setoff against the judgment entered on arrearages and temporary support. We observe that this very issue had already been raised by Thomas Haymond as a counterclaim in Elizabeth Haymond's suit to enforce her Illinois judgments on the arrearages in temporary support, and that Elizabeth Haymond's motion in West Virginia for a summary judgment on this matter was denied. In fact, it would appear that the issue is either currently pending before, or has been resolved by, the court in Preston County, West Virginia. Under these circumstances, the principle of priority would clearly apply. Under this principle, exclusive authority to deal with an action is generally accorded to the court of concurrent jurisdiction which first exercises its jurisdiction over the action, and other courts of concurrent jurisdiction may not interfere with the proceedings which are thus pending. (20 Am. Jur. 2d *Courts* §128 (1965).) There was, therefore, no error in the trial court's refusal to act in a matter already pending before the West Virginia court.

For the foregoing reasons the judgments and order of the circuit court of Stephenson County appealed from will be affirmed.

Motion to amend the record on appeal allowed.

Judgment affirmed; motion allowed.

NASH and WOODWARD, JJ., concur.