BERNARD G. STUTLER, Plaintiff-Appellee, *v.* BRENDA E. STUTLER, Defendant-Appellant.

Third District No. 78-45

Opinion filed June 28, 1978.

Sidney S. Deutsch, of Deutsch & Deutsch, of Rock Island, for appellant.

Raymond C. Rose and Larry T. Frantz, both of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Brenda E. Stutler, defendant appeals from an order of the Circuit Court of Knox County denying her petition to set aside the settlement provisions of a decree of divorce.

Brenda and Bernard G. Stutler were married in 1944 and had two sons who are now grown. The Stutlers were divorced in 1961 but remarried three months later. In February of 1977, plaintiff Bernard Stutler, a 53-year-old attorney, filed this suit for divorce in Knox County, Illinois,

alleging defendant's mental cruelty. Defendant, who was then 51 years old, retained counsel from Peoria, Illinois, and paid him a retainer of $1,000.

The parties owned two parcels of real estate in joint tenancy: a four-room house where defendant resided and an adjoining 11-acre tract with residence where plaintiff lived. In addition plaintiff was purchasing on contract the building where his law office was located, he owned a 1975 automobile, he had $600 savings, but no other assets, and he owed $9,000 on a bank loan. He still owed $6,000 on the $10,000 purchase price of the office building. His annual income from the practice of law for the past three years was between $36,000 and $42,745.

In previous years defendant had engaged in part-time office work, earning between $2,900 and $4,500, and she had $7,300 cash savings. In August 1976 defendant was seriously injured in an automobile accident which demolished her car, and in May of 1977 she underwent reconstructive surgery on her right shoulder which had been fractured in the accident. Shortly before the divorce decree was entered, defendant's physician reported she would have some permanent disability as a result of her injuries, but he did not yet know the exact degree of disability. The doctor also stated, "I would assume that she would be able to undertake most activity and would be able to maintain most kinds of work."

On July 28, 1977, a hearing on defendant's motion for temporary alimony was scheduled. Following the parties' arrival at the courthouse, they orally agreed to a property settlement negotiated by their respective attorneys, and the trial court, after hearing testimony from plaintiff as to the grounds for divorce and the terms of the settlement, entered a decree of divorce which incorporated the division of property as agreed. The settlement awarded defendant $400 per month periodic alimony and required her to convey her interest in the 11-acre parcel to plaintiff. The house where she lived would be sold, and the net proceeds divided evenly between the parties. In addition, defendant was awarded the piano, a television, and a table and chairs, while plaintiff would receive his books. Plaintiff testified that each party would be responsible for his or her own attorney fees and costs, but defendant interjected from her seat, "No, that wasn't agreed to." The decree conformed to plaintiff's testimony.

Within 30 days of entry of the decree, defendant filed a petition to set aside the settlement provisions of the divorce decree. Following an evidentiary hearing before the same trial judge, the petition was denied. At the hearing on the petition, defendant's former counsel, Maximilian M. Prusa, testified that he did not utilize formal discovery procedures to obtain disclosure of plaintiff's assets because plaintiff's attorney, whom he

knew and trusted, furnished the information informally and because defendant had expressed her satisfaction that all plaintiff's assets were disclosed. He stated that plaintiff had wanted a lump sum settlement and, at first, refused to consider periodic alimony. On June 2, 1977, a scheduled hearing for temporary alimony was continued to July 28 because the circuit judge said that he knew both parties and would prefer not to be the judge if this were a contested matter and also because the defendant, having just had surgery, did not know what her needs would be. Prusa further stated that two days before the July 28 hearing, he talked with defendant by telephone and advised her that plaintiff wanted to reach a final settlement. Prusa asked her what amount of periodic alimony she would accept and at that time she said $400 per month. At the courthouse on July 28 after Prusa talked to plaintiff and then spent 45 or more minutes discussing the proposed settlement with defendant, she agreed to the division of property and award of alimony as negotiated. Prusa testified that he did not mention attorney fees or the tax consequences of the settlement in his discussions with her. He also testified that defendant expressed dissatisfaction only with the inconvenience of moving from her house. He stated that he believed the settlement was fair and met her needs, since she expected to return to work and to earn $500 or $600 monthly.

Defendant also testified at the hearing on her motion to set aside the settlement. She said that she had wanted $400 per month alimony plus the house where she lived and the first time she *really* discussed her needs with Prusa was at the courthouse on July 28; however, she also testified that she had made out a budget for her attorney earlier. She stated that before going into the courtroom, she had not understood that she would get only one-half of the house, rather than all of it, and that she had been afraid to speak up in court because she was emotionally upset that day and because she was afraid of being in contempt of court. However, she admitted speaking up to object to the arrangement for attorney's fees.

Plaintiff was called as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), and he testified only about the extent of the property owned by the parties. He was unable to estimate what it had cost for the two of them to live together during marriage.

On appeal from the order denying defendant's petition, she contends that the settlement should be set aside because she was coerced and pressured to agree to a settlement that was not fair or sufficient.

■■ First, we note that the trial judge originally said he would prefer not to hear this divorce action if it were contested but later he did hear the contested motion to set aside the divorce decree. No objection or

request for change of judge was made by either party prior to the hearing on the motion, and on appeal no claim is made that the trial judge was disqualified. Since no error is urged, none is found.

■■ ■ In divorce proceedings agreements which settle matters of support and property are looked upon with favor by Illinois courts (*Gaddis v. Gaddis* (5th Dist. 1974), 20 Ill. App. 3d 267, 314 N.E.2d 627), and when the provisions of a written or oral agreement are incorporated into the decree, the contract becomes merged in the decree and is conclusive upon the parties in the same manner as if the court had made the determination. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *Beattie v. Beattie* (3d Dist. 1977), 53 Ill. App. 3d 501, 368 N.E.2d 178.) In *Beattie*, this court stated:

> "Courts are unable to set aside such a property settlement agreement unless there is clear and convincing evidence that the agreement was entered as the result of coercion, fraud or duress, or is contrary to public policy or morals." 53 Ill. App. 3d 501, 506, 368 N.E.2d 178, 182.

Defendant argues that she was coerced and pressured into agreeing to a property settlement which was not fair or equitable and therefore that the settlement should be set aside. She relies heavily upon *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582, where the supreme court set aside a property settlement "not only for its manifest inequity and unfairness, but also because its accomplishment does not clearly appear to have been entirely free from coercion and misrepresentation." (14 Ill. 2d 295, 305.) In *James* the negotiations were conducted at the courthouse prior to the hearing, and during negotiations the trial judge advised the wife that $200 per month was the top allowance for support of her two sons and that she had no claim by reason of her joint interest in the residence unless she contributed to its purchase price. Both opposing counsel and her own counsel told her that none of her husband's property in a trust fund could be touched. These representations by the judge and by counsel were inaccurate. Mrs. James finally accepted the settlement when her attorney insisted that the case had to be concluded that day. Throughout the negotiations and the hearing which followed, Mrs. James manifested her dissatisfaction with the proposals, but her will was overborne by the court and attorneys. No such facts appear here.

In the case at bar, the petition to set aside the settlement asserts that defendant lacked "sufficient facts and proper advice," to enable her to judge the fairness of the settlement, and then gives examples of advice her attorney failed to give her. She makes no claim that she was given erroneous advice or information. She claims that alimony of $4,800 per year is not equitable in view of plaintiff's income, but she made no allegations and introduced no evidence concerning the customary

expenses or needs of either party. She also argues that the disposition of real estate was unfair, but she admitted that her husband had contributed all of the funds for the purpose of both the 11-acre tract and the office building.

In another case relied upon by defendant, *Crawford v. Crawford* (1st Dist. 1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, the settlement was set aside upon a showing that the wife was not consulted during negotiations, and before the decree was signed, she objected strenuously to the oral agreement although she expressly agreed to the settlement at the hearing. These facts weighed heavily in favor of setting aside the property settlement in *Crawford,* but no such situation existed here where defendant was consulted before and during negotiations and, except as to attorney's fees, did not object to the settlement prior to entry of the decree.

■■ The record is obviously insufficient to prove fraud or misrepresentation, and we are not persuaded that defendant has clearly and convincingly established either coercion or unfairness. Defendant's former counsel testified that he informed defendant of plaintiff's desire for a final settlement two days before the July 28 hearing, that she had given him a budget and had discussed her income needs on earlier occasions, and that she requested $400 per month alimony. He also said that she agreed to the proposed division of the real estate if she would be allowed some time to find another place to live. Defendant's own testimony as to these matters was confusing. She admitted discussing her budget and alimony with her attorney in telephone conversations prior to the hearing, but also said she had insufficient time to study the proposal. She stated that she had wanted all of the residence, not half, and that she did not understand that the decree would be final.

The Supreme Court of Illinois, in *Guyton v. Guyton* (1959), 17 2d 439, 445, 161 N.E.2d 832, stated:

> "The question of fairness was determined here by the parties themselves. If error was made it was that of defendant or his counsel, not that of the chancellor. In the words of this court's opinion in *Smith v. Smith,* 334 Ill. 370, 379, 'The parties did not rely upon the equity powers of the court for the adjustment of their marital rights so far as property was concerned. They did what they had a legal right to do—adjusted those rights by mutual agreement. Like any other agreement upon full consideration, the parties are concluded by it in the absence of fraud.' "

We think these comments are applicable to this case. The facts here, unlike those in *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582, and *Crawford v. Crawford* (1st Dist. 1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, indicate that defendant's efforts to have the settlement set aside are

probably prompted by a mere change of heart and that the circumstances surrounding the negotiations were not shown to have been coercive or misleading. A reviewing court may not substitute its judgment for that of the trial court, and we decline to do so here with one exception.

We find that the provision for each party to pay his or her attorney fees was not a part of the agreed property settlement. The evidence is undisputed that defendant did not agree to such an arrangement, that she immediately disavowed plaintiff's testimony to the contrary, and that she expected to be reimbursed for her attorney's fees. We therefore reverse paragraph 6 of the divorce decree and remand for a new hearing on the question of fees and costs. The remainder of the decree is affirmed.

Affirmed in part; reversed in part and remanded with directions.

BARRY, P. J., and STOUDER, J., concur.