JOHN W. HIGGINS, Plaintiff-Appellant, *v.* COLUMBIA TOOL STEEL COMPANY, Defendant-Appellee.

First District (2nd Division)    No. 78-1410

Opinion filed September 18, 1979.

Edward A. Berman, Ltd., and Lewis W. Schlifkin, both of Chicago, for appellant.

Rooks, Pitts, Fullagar and Poust, of Chicago (William W. Fullagar and William M. Stevens, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, John W. Higgins (hereinafter referred to as Higgins), appeals from an order of the circuit court of Cook County entered on May 25, 1978, which granted a motion of defendant, Columbia Tool Steel Company (hereinafter referred to as the Company), to vacate an order previously entered by the court on March 7, 1978. In its order of May 25, 1978, the court also "affirmed" an arbitrator's award which the court construed as determining that plaintiff was ineligible for pension benefits under the Company's pension agreement. Plaintiff has presented a number of issues for review[1] but the dispositive question is whether the

---

[1] "1. Was the trial court under an obligation to follow its own finding that the plaintiff had vested rights in the pension agreement with defendant, where defendant failed to appeal that order and finding, and all arbitration proceedings ensued from that finding and order? 2. Did the trial court commit reversible error when it reversed its own finding and

trial court erred when it entered its initial order on February 14, 1975, finding that "plaintiff had acquired vested rights under the Pension Agreement * * *" and as a result referring to arbitration only the issue of the amount of the pension benefits to which plaintiff was entitled.

Seldom has this court been confronted with such a comedy of confusion and error. Although the tenor of this case approaches the absurd and the incidents slapstick, the resolution of this issue is a serious matter not only for the parties to this cause, but also for those who would look to this court's decisions for their precedential impact. For the reasons hereinafter set forth we reverse and remand for further proceedings not inconsistent with this opinion.

On November 2, 1972, the Company, by resolution of its board of directors, extended to its salaried employees, including its district sales managers, the provisions of the pension agreement theretofore negotiated between the Company and the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers. This agreement called for the arbitration of all disputes involving eligibility for pension benefits or the amount of said benefits.

Higgins was 56 years old and an applicant for pension benefits. He was employed by the Company from March 1, 1954, until November 30, 1970. On January 16, 1973, Higgins was rehired by the Company as a district sales manager. On February 10, 1973, Higgins received notice of his termination which was to become effective on March 15, 1973. However, Higgins left the employment of the Company on February 11, 1973.

On September 10, 1974, Higgins filed a three-count complaint requesting declaratory judgment against the Company on grounds that Higgins had a vested contractual right to a lifetime pension. Higgins alleged in count I that his rights under the pension agreement had been arbitrarily terminated by the Company after those rights had vested, even though the agreement did not provide for a forfeiture of Higgins' rights. Higgins contended in count II that his discharge from employment without cause constituted an agreement within the meaning of section 2.5 of the pension agreement between the Company and him that his

---

order three and one-half years later, following an arbitration predicated upon that earlier order, where the order finally determined substantive rights of the parties, containing a finding of no just reason to delay enforcement or appeal from the order, and where defendant failed to appeal therefrom? 3. Is the court obligated to affirm the award of the arbitrator and to compute the amount of plaintiff's pension based thereon? 4. Did the trial court find correctly in the first instance that the eligibility requirements of the pension agreement is contrary to public policy and therefore illegal and invalid? 5. Does the court under the Illinois Constitution, Article 1, Sec. 12, have the duty to fashion a remedy for plaintiff's vested and non-forfeitable right under the pension agreement?"

retirement was in their mutual interest.[2] In count III, Higgins urged that his arbitrary discharge was a breach of contract and his damages were to be measured by the pension benefits to which he would have otherwise been entitled.

On October 5, 1974, the Company filed a verified answer and set forth therein five affirmative defenses. The Company contended (1) that Higgins was ineligible under section 2.5 of the pension agreement; (2) that Higgins did not "retire" in accordance with the plan; (3) that Higgins had never met with a representative of the Company with respect to any differences as required by the extension agreement nor had Higgins requested the question be referred to an impartial umpire as required by the extension agreement; (4) that Higgins did not make a pension application as required by the extension agreement; and (5) that Higgins never acquired any vested rights under the agreement as provided in section 10.4.[3]

On November 18, 1974, the Company filed a motion for judgment on the pleadings alleging that Higgins did not qualify for pension benefits under the pension agreement and that Higgins had not exhausted his remedies as required by section 7.1 of the agreement.[4] After hearing argument on the Company's motion, the trial court in its order of February 14, 1975, (1) denied the Company's motion for judgment on the pleadings; (2) dismissed Higgins' complaint without prejudice; (3) directed the parties to seek arbitration; (4) retained jurisdiction over the subject matter; (5) found that Higgins had "acquired vested rights under the Pension Agreement referred to in the complaint upon fifteen years of service with [the Company]"; and (6) found no just reason to delay enforcement or appeal of the order.

The parties then selected an arbitrator. At a proceeding before the arbitrator on November 26, 1975, the arbitrator remarked: "The question is, what is the effect of * * * [the trial court's finding that Higgins had acquired a vested right] [in] the order of February 14, 1975. I do not find it clear enough to proceed with any degree of accuracy or comfort on

---

[2] This section provides in part that any participant under the pension agreement "who shall have at least 15 years continuous service and shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more and * * * who considers that it would be in his interest to retire and the Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions, * * * shall be eligible for a pension."

[3] Section 10.4 provides in part that, "[n]o participant prior to his retirement under conditions of eligibility for pension benefits shall have any right or interest in or to any portion of the funds which may be paid into any pension trust or trust hereafter established for the purposes of paying pensions and no participant shall have any right to pension benefits except to the extent provided in this Agreement."

[4] The pleadings and the briefs refer to section 7.1 of the pension agreement. Section 7.1 applies only to Union members. Section 2(b) of the extension of pension agreement is applicable to plaintiff.

what I am supposed to do." The arbitrator then sent the parties back to the trial court for clarification.[5] On January 30, 1976, the parties appeared before the trial court to obtain clarification. The following colloquy took place:

"Mr. Stevens [Company's counsel]: The Court entered an order on February 14, 1975 finding that the plaintiff acquired vested rights under the pension agreement referred to in the complaint upon fifteen years of service with the defendant. The parties went to the conference room to draw an order. There was a discussion. A dispute as to what the Court was finding arose. Mr. Berman [Higgins' counsel] and myself returned [and] reapproached the bench. Mr. Berman specifically asked whether or not the Court was finding that this man had become eligible for a pension. The Court stated that it was not finding what rights the man was entitled to, as that was a matter for the arbitrator to decide.

The Court: That's right.

Mr. Stevens: You were merely finding that he acquired vested rights under the pension agreement upon fifteen years of service.

The Court: That's right.

Mr. Berman [Higgins' counsel]: Can the arbitrator determine he has no vested rights under the agreement?

The Court: Absolutely not. His rights are vested, but the arbitrator will determine what his rights are."

With this "clarification" the parties proceeded before the arbitrator on May 3, 1977.

At the arbitration proceedings the parties stipulated that Higgins' service with the Company for purposes of pension calculation totaled 16 years, nine months and 25 days.[6] The parties further stipulated that Higgins' termination on February 11, 1973, was not due to physical disability, layoff or retirement.[7] It was also stipulated that no claim for pension benefits is made under the eligibility sections 2.1 through 2.4 of the Pension Agreement. The only other eligibility section remaining, section 2.5, provides as follows:

---

[5] In addition the parties had appeared before the court on several other occasions prompted by Higgins' petitions to enforce the January 14, 1975, order.

[6] Higgins' employment contract with Company dated January 16, 1973, provides: "Your service with us is restored for purposes of pension calculation with no penalty for the interim time off or the prior severance." The above calculation indicates that this clause was given effect.

[7] Neither the record nor the briefs indicate the reason for Higgins' termination. Higgins alleges in his complaint that he was discharged without cause. Company denies the allegation but does not offer any reason for Higgins' termination. Higgins further alleges that Company advised him on March 1, 1973, that his continuous service was broken by discharge and therefore he was not eligible for pension benefits.

*"70/80 Retirement*

Any participant who shall have had at least 15 years continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(a) whose continuous service is broken by reason of a layoff or physical disability, or

(b) whose continuous service is not broken and who is absent from work by reason of a physical disability or a layoff and whose return to active employment is declared unlikely by the Company, or

(c) who considers that it would be in his interest to retire and the Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions, shall be eligible to retire on or after October 31, 1972, and shall upon his retirement (hereinafter '70/80 retirement') be eligible for a pension."

In reference to section 2.5, the parties stipulated (1) that Higgins' continuous service which was "broken" by his termination on February 11, 1973, was not "broken by reason of a layoff or physical disability" (see subsection 2.5(a)); (2) that Higgins' continuous service was in fact "broken" by his termination on February 11, 1973, and that he was not merely "absent from work by reason of a physical disability or layoff" (see subsection 2.5(b)); and (3) that Higgins did not consider it in his interest to retire, that the Company did not consider Higgins' retirement in its interests and the Company did not approve "an application for retirement under mutually satisfactory conditions"[8] (see subsection 2.5(c)).

On December 9, 1977, the arbitrator's award was filed. On the same day the court entered an order upon motion of Higgins "to set arbitration award for hearing." The arbitrator's award provided as follows:

"I have reviewed the testimony and evidence of the parties and the various briefs and reply briefs, as well as the authorities cited by the parties. The case presented to me is a novel one, principally because *it is clear that the Court has already clearly determined that the grievant has a vested right under the Pension Agreement.* This matter was referred to me for arbitration under the terms of Section 7.1 of the Pension Agreement, which deals with disputes arising between the Company and any participant as to the participant's right to a pension or the amount of the pension. *I read the Court's order as establishing the participant's right to a pension*

---

[8] Plaintiff did not submit an application for retirement prior to his termination on February 11, 1973.

*but when I come to the issue of the amount of the pension, which appears to be the only matter referred to me for determination,* I find no specific basis in the Pension Agreement under which a specific amount of pension can be determined.

It appears that the Claimant, Higgins, does not come within the specific coverage of the five types of pension eligibilities set forth in Section 2 of the Pension Agreement. It is stipulated that Higgins makes no claim under Section 2.1 relating to "normal retirement", or under Section 2.2 relating to "30 year retirement", or under Section 2.3 "60/15 retirement" or under Section 2.4 "permanent incapacity retirement". This leaves Section 2.5 "70/80 retirement", which provides eligibility for a participant, who has at least 15 years continuous service, and attains the age of 55 years and whose combined age and years of continuous service equals 70 or more. Under the terms of Section 2.5, however, the participant's eligibility must come about because of one of the three situations set forth in sub-sections (a), (b) or (c). *In Higgins' case, the severance of his employment does not come squarely within any of the above mentioned sub-sections.*

I do not agree with the Company that Higgins is not a "participant under the terms of Section 1.1(c) but I do agree with the Company's position that the requirements of Section 2.5 are not specifically satisfied in the instant case. *Thus we are left with a situation where Higgins has a vested right in the Pension Program as determined by the Court* which cannot be forfeited under any terms of the Pension Agreement and concerning which the employer may not divest him of his rights under relevant existing case law. However, I find no formula in the Pension Agreement for determining the total dollar amount to which Higgins claims he is entitled by virtue of the order of the Court and the terms of the Pension Agreement.

While I am averse [*sic*] to transferring the determination of the issue back and forth from the Court to the Arbitrator, I am compelled to suggest that the remedy must lie with the Court's jurisdiction in equity. *Inasmuch as the Court has determined that Higgins has a vested right under the terms of the Pension Agreement, the Court must have the authority to fashion a remedy* which would make the vested right meaningful to Higgins or we are left with a situation where Higgins has a right but no remedy under which he can enforce it. The undersigned is limited to the terms of the Pension Agreement but the Court may have a broader jurisdiction under which Higgins may clothe his vested right which now stands naked." (Emphasis supplied.)

On March 7, 1978, the trial court entered declaratory judgment for Higgins even though the court had dismissed Higgins' complaint on February 14, 1975.[9] The court in its order of March 7, 1978, found that Higgins had "a vested right to pension benefits and satisfied the eligibility requirements under section 2.5 of the Pension Agreement upon fifteen years of service and upon the attainment of fifty-five years of age." The court also found section 2.5(c) of said agreement, which purports to require company approval of retirement based upon the company's interest, "is contrary to public policy and is, therefore, illegal and invalid, in that it operates to preclude the payment of benefits to which [Higgins] became entitled upon fifteen years of service and upon the attainment of fifty-five years of age."

On April 6, 1978, the Company filed a post-trial motion to vacate the court's order of March 7, 1978. On May 25, 1978, the court (1) granted the Company's motion to vacate the declaratory judgment entered in favor of Higgins; (2) vacated its finding that subsection 2.5(c) of the pension agreement was illegal and void as against public policy; and (3) "affirmed" the arbitrator's decision which the court construed as determining that Higgins did not qualify under the specific eligibility provisions of the pension agreement. Plaintiff appeals.

At the outset, we shall consider the Company's contention that this appeal should be dismissed because the record does not include the report of proceedings before the arbitrator on May 3, 1977.

■■ ■ A duty rests upon the party prosecuting the appeal to include evidence essential to the disposition of the contention urged. (*Kruse v. Rhodus* (1949), 336 Ill. App. 537, 84 N.E.2d 688.) Where a party desires to have a judgment reviewed it is incumbent upon him to present a record of the proceedings and judgments sufficient to show the errors of which he complains. (*Neylon v. Illinois Racing Board* (1978), 66 Ill. App. 3d 621, 384 N.E.2d 433.) The report of proceedings before the arbitrator is not essential to the disposition of the issues urged on appeal by either party. The record includes the arbitrator's award and memorandum opinion and is sufficient to disclose the errors of which Higgins complains.

In its order of February 14, 1975, the trial court, *inter alia*, (1) directed the parties to seek arbitration; (2) found that Higgins had "acquired vested rights under the Pension Agreement referred to in the complaint upon fifteen years of service with [the Company]"; and (3) found no just reason to delay enforcement or appeal of the order.

The relevant portion of the extension of pension agreement, section 2(b), provides:

"* * * any such difference as shall arise shall be resolved as

---

[9] The record reveals no reason for the court's dismissal of Higgins' complaint nor does it include the report of proceedings of that date.

follows: Said employee or his representative shall meet with a representative of the Company and if an agreement cannot be reached, the question shall be referred to an impartial umpire to be selected by the Company and by said employee or his representative. The impartial umpire shall have authority only to decide the question pursuant to the provisions of the Agreement applicable to the question but he is not to have authority in any way to alter, add to or subtract from any such provisions; and his decision on any such dispute shall be binding on the Company and on the employee. The fees and expenses of the umpire shall be shared equally between the Company and the employee."

■■ When the extension to pension agreement containing the above arbitration clause was executed, the Uniform Arbitration Act was in force in Illinois, and must therefore be deemed a part of the agreement as though expressly incorporated therein. (*Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359, 363, 359 N.E.2d 844, citing *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 544, 165 N.E.2d 286.) The parties were then irrevocably committed to arbitrate all disputes arising between the Company and any salaried employee as to such employee's right to a pension or the amount of the pension. Ill. Rev. Stat. 1971, ch. 10, par. 101.

The proper judicial function of the trial court in this case was limited to a summary determination of the question of whether the pension agreement required arbitration of disputes arising thereunder. When the court determined that arbitration was required, the court should have submitted to arbitration all matters in dispute. It is our opinion that the trial court should not have considered the merits of the underlying dispute as to whether Higgins was entitled to benefits under the pension agreement. (*Bunge Corp. v. Williams.*) The state of confusion in which we find this case appears to have originated from the court's use of the phrase "vested rights." By the use of this phrase the court appears to have led the arbitrator to conclude that the court had preempted the arbitrator's function of determining whether Higgins was in fact entitled to a pension. This in turn led to the confusion manifested by the arbitrator's opinion and converted into dicta what the arbitrator might otherwise have rendered as a finding.[10] In "affirming" the purported

---

[10] In his opinion the arbitrator remarked, "It appears that the Claimant, Higgins, does not come within the specific coverage of the five types of pension eligibilities set forth in Section 2 of the Pension Agreement." The arbitrator also remarked, "° ° ° I do agree with the Company's position that the requirements of Section 2.5 are not specifically satisfied in the instant case." However, the arbitrator's award provides: "John Higgins has a vested right to a pension under the terms of the Pension Agreement entered into between Columbia Tool Steel Company and International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmith, Forgers and Helpers, Lodge 1016, but I find no specific formula for determining the amount of the pension under the terms of the said Pension Agreement."

findings of the arbitrator, the court appears to have elevated dicta of the arbitrator to the level of judicial findings. As a further result of this confusion both parties to this action pirouetted from praise to criticism of the trial court's rulings.

Section 5 of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 105) provides for a hearing at which the parties are entitled to be heard, to present evidence and cross-examine witnesses. The arbitrator's opinion reveals that no meaningful hearing was had before him on the issue of Higgins' eligibility for a pension. Furthermore, it appears that Higgins may have entered into the stipulation solely in reliance on the trial court's finding that he had acquired a vested right to pension benefits.

■■ Finally we consider Higgins' contention that the order of February 14, 1975, was a final and appealable order and that the court is now precluded from reviewing that order.

> "The mere fact a judge says an order is appealable does not make it appealable. Where an order is not appealable, a trial court cannot confer appellate jurisdiction by a finding that there is no just reason for delaying enforcement or appeal. [Citations.] And an order is only appealable if it is final. [Citations.] 'A final judgment is one that finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof.' [Citations.] 'To be final and appealable a judgment order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment.' " (*Coble v. Chicago Health Club, Inc.* (1977), 53 Ill. App. 3d 1019, 1020, 369 N.E.2d 188.)

The mere finding, no matter how erroneous, that Higgins had acquired vested rights in the pension agreement did not render the order final, nor did it terminate the litigation. The amount of the pension has not been determined. Without an amount the trial court could not proceed with the execution of the judgment. The Company could not have appealed that finding at the time it was made.

■■ Based on the foregoing we conclude that the trial court's order of February 14, 1975, finding that Higgins had acquired vested rights confused and tainted the entire proceeding and thus denied both parties the opportunity of a full and fair hearing on the issue of whether Higgins was entitled to a pension. Therefore, we reverse the order of the circuit court of Cook County and remand the cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.