# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Epting*, 2012 IL App (1st) 113727

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF BRENDA C. EPTING, Petitioner-Appellee, and PEDRO A. EPTING, Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-11-3727, 1-12-0068 cons. |
| Filed<br>Rehearing denied | December 7, 2012<br>December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court had subject matter jurisdiction in a marriage dissolution proceeding because its factual finding of residency was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in denying respondent's motion to reconsider the prove-up based on his claims that he lacked a "total understanding" of the settlement agreement and that he was coerced into signing it, especially when respondent raised issues not raised in his motion to vacate without explaining why those issues were not raised earlier and he failed to show how the trial court misapplied the law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-01839; the Hon. Jeanne Cleveland Bernstein, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Paul L. Feinstein, of Paul L. Feinstein, Ltd., of Chicago, for appellant.

Joseph G. Phelps, of Rinella & Rinella, Ltd., of Chicago, for appellee.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1     On March 3, 2009, petitioner Brenda Epting filed a petition for dissolution of marriage in the circuit court of Cook County. The Eptings' two children were both emancipated. On July 13, 2011, the parties entered into an oral marital settlement agreement which was included in the prove-up for the dissolution. That same day, the parties reduced the oral marital settlement agreement to writing and signed it. The written settlement agreement provided that respondent Pedro Epting would pay $3,967 per month for maintenance payments, based in part on Pedro's annual income of $119,678 and Brenda's annual income of $12,840. The written settlement agreement included a 50% income-sharing plan, suggested by the trial court during a pretrial conference.

¶ 2     A month after signing the written settlement agreement, Pedro filed a motion on August 11, 2011, to "vacate the prove-up and other relief," which the trial court denied. On October 11, 2011, the trial court entered a judgment dissolving the parties' marriage and incorporating the written marital settlement agreement. The dissolution judgment was signed by each party's attorney. Pedro's attorney then filed a motion to withdraw, and on October 27, 2011, Pedro filed a *pro se* motion to reconsider the denial of Pedro's previous motion to vacate the prove-up. The trial court denied Pedro's *pro se* motion to reconsider on November 17, 2011, after holding a hearing on the motion.

¶ 3     Pedro now appeals, claiming: (1) that the trial court lacked subject matter jurisdiction to dissolve the marriage and (2) that even if the trial court had subject matter jurisdiction, it erred in denying his motion to reconsider. For the following reasons, we affirm.

¶ 4                              BACKGROUND
¶ 5                              I. Pleadings
¶ 6     Brenda filed her petition for dissolution of marriage on March 3, 2009. In her petition, she alleges that she and Pedro resided in Berkeley, Illinois, at the time she filed the petition and that they had both continuously resided in the State of Illinois for at least 90 days preceding the filing of the petition. She alleges that there were two children born to the

marriage and none have been adopted, that both children have been emancipated, and that she is not presently pregnant.

¶ 7 Pedro filed a *pro se* appearance on April 8, 2009, but he did not file an answer. On November 19, 2009, Pedro's first attorney[1] filed an appearance on behalf of Pedro, but he also did not file an answer on Pedro's behalf.

¶ 8 II. Marital Settlement Agreement and Testimony

¶ 9 On April 4, 2011, this case was set for a trial on July 13, 2011. On the trial date, the trial court conducted a pretrial conference and made a recommendation for maintenance based on a model income-sharing plan, which equalized the parties' annual incomes by calculating each party's tax liabilities, medical insurance premiums, the tax benefits to Pedro resulting from his maintenance payments, and the tax liabilities to Brenda resulting from the maintenance payments she received. Later that same day, the trial court held an oral prove-up hearing in which both parties testified and agreed to the terms of the marital settlement agreement.

¶ 10 At the prove-up hearing, Brenda testified that the parties were married in Maywood, Illinois, that the marriage license was registered in Cook County, and that Brenda and Pedro had been residents of Cook County for at least 90 days prior to the date of the hearing for dissolution. Brenda and Pedro then agreed to an oral settlement agreement, requiring Pedro to pay Brenda $3,976 per month in maintenance payments. The payments were based on $2,820 for permanent maintenance with a 50% income-sharing plan designed to place the parties "in the same position as a couple." The income-sharing plan was based on Pedro's annual income of $119,678 and Brenda's income of $12,840. If the parties' financial picture changed, the agreement provided that the income-sharing plan would be adjusted accordingly.

¶ 11 During the prove-up, Brenda acknowledged in Pedro's presence that the amount she receives from Pedro would decrease if her income increased, and that she would cease receiving payments from Pedro if she were to enter into a continuing, conjugal relationship with another adult or if she or Pedro passed away. During the prove-up, Brenda acknowledged that she understood the oral marital settlement agreement, and entered into it freely and voluntarily, and agreed to be bound by the terms of the agreement.

¶ 12 Pedro testified that he heard "the agreement that was stated by Brenda's attorney" and that he understood the terms of the agreement. Pedro testified as follows:

"Q. And has anyone forced or coerced you into agreeing to this settlement today?

---

[1]Over the course of the proceedings, Pedro had three attorneys. Pedro hired his first attorney after filing his *pro se* appearance, and his first attorney withdrew after the prove-up hearing. Pedro's second attorney filed an appearance after the prove-up hearing and filed a motion to vacate the prove-up on Pedro's behalf. After the trial court denied the motion to vacate the prove-up, Pedro's second attorney withdrew. Pedro then filed a *pro se* motion to reconsider the denial of the motion to vacate. On this appeal, Pedro is represented by his third attorney.

A. No.

Q. And are you doing this freely and voluntarily?

A. Kind of, sort of, yeah.

Q. Well, you can't say kind of, sort of. Because if you aren't doing it freely and voluntarily, that means–

A. Yes.

Q. –someone has forced you to do it.

A. Well, I did agree to the terms, yes.

Q. So you're doing it freely and voluntarily?

A. Yes."

¶ 13 Following the parties' testimony, the trial court found that the trial court had both personal and subject matter jurisdiction over the parties, that the residency requirement had been satisfied, that the grounds of irreconcilable differences had been satisfied, and that all other statutory requirements had been met. Brenda's attorney agreed to draft the judgment for dissolution of the marriage, and that same day, the parties signed a written settlement agreement, which was to be incorporated into the judgment for dissolution of the marriage.

¶ 14 III. Motions

¶ 15 Pedro's first attorney withdrew as counsel on August 8, 2011. On August 11, 2011, four days after Pedro's first maintenance payment to Brenda was due, Pedro obtained new counsel, who filed a motion to "vacate the prove-up and other relief." In the motion, Pedro alleges that the financial calculations used during the prove-up were incomplete and inaccurate, and that the disposition of the property was based upon these incomplete and inaccurate calculations. However, Pedro's allegations did not show how the financial calculations were incomplete and inaccurate. The trial court entered an order setting a hearing date to hear the motion and to present the written judgment for dissolution of marriage and any petitions for fees.

¶ 16 During the motion hearing on October 11, 2011, the following discussion was had on the record:

"THE COURT: Do you understand that if I vacate [the prove-up] you are on trial now? Do you understand that?

PEDRO'S ATTORNEY: Yes, absolutely.

THE COURT: You have your party here, your case is here.

PEDRO'S ATTORNEY: Yes. Absolutely. We are in the process of hopefully settling the case.

THE COURT: There's no hopefully. I mean now. You are on trial. Do you still want to go ahead?

PEDRO'S ATTORNEY: Your Honor, we would like to talk with regard to the settlement.

THE COURT: You know what happened the last time your client backed out of it? We went to trial, and all of a sudden miraculously then he went back to the agreement.

* * *

THE COURT: Motion to vacate is denied. We are done here.

PEDRO'S ATTORNEY: Your Honor, I think we should be given the chance for oral arguments prior to–

THE COURT: Really? You haven't read my standing orders then. Your motion to vacate, I read it. I heard it was being objected to. I am intimately familiar with this case. I am not going to put up with the shenanigans any more. We are done here. Take it to post-decree or take it to the Appellate Court. You are done in front of me.

PEDRO'S ATTORNEY: Your Honor, if you–

THE COURT: Part of it you don't understand?

PEDRO'S ATTORNEY: Your Honor, if you were to look over the fin [*sic*] plans with regard to the–

THE COURT: I don't need to look over them. If you were properly prepared when you came to trial the last time, and you step into the shoes, you should have had them then, or maybe you did, I don't know.

PEDRO'S ATTORNEY: Your Honor, with all due respect, there was a different attorney–

THE COURT: Too bad. Goodbye. Thank you. Thank you.

* * *

PEDRO'S ATTORNEY: [Brenda's] [c]ounsel and I are actually in agreement with regards to a new fin [*sic*] plan that actually has the correct numbers in it.

THE COURT: You can say anything you like after I have already ruled. I don't know. If [Brenda's] counsel wants to do some kind of modification with you, then that is what he will do, but it will not be with my participation."

That same day, the parties and their attorneys signed a written stipulation to hear the matter as an uncontested case, and the trial court entered a judgment dissolving the parties' marriage, which incorporated the written settlement agreement. Pedro's second attorney then filed a motion to withdraw from the case.

¶ 17    Over a month later, Pedro, *pro se*, then filed his own motion to reconsider the trial court's denial of his prior motion to vacate the prove-up, claiming that he did not have a "total understanding" of the marital settlement agreement when he agreed to it, and that he acted pursuant to his attorney's advice and felt "threatened by repercussions of not agreeing to the prove up and then not signing the [marital settlement agreement]." Pedro further claimed that his attorney told him that the trial court had stated that it would rule in Brenda's favor if the matter went to trial and that Pedro had no other option but to sign the marital settlement agreement. Pedro further claimed that neither he nor his attorney understood that his retirement pension was not part of the monthly payment of $3,976; that the parties met for less than 20 minutes with the trial judge, who ignored the "relevant factors" presented by the

-5-

parties; that, when Pedro questioned the validity of the figures, his attorney told him that the trial judge suggested that he file for bankruptcy; that the marital home had negative equity; and that, under the marital settlement agreement, Pedro was solely responsible for all "losses, liabilities, and marital debt."

¶ 18    Although the trial court held a hearing on the motion, the appellate record contains neither a transcript of the hearing nor a bystander's report. In a written order denying Pedro's motion to reconsider, the trial court found that the *pro se* motion raised issues not raised in the prior motion to vacate and violated Illinois Supreme Court Rule 274 (eff. Jan. 1, 2006), which prohibits the filing of multiple postjudgment motions.

¶ 19    This appeal followed.

¶ 20                                    ANALYSIS

¶ 21    On appeal, Pedro first claims that Brenda did not prove that the parties satisfied the residency requirement of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/401(a) (West 2008)), and therefore the trial court's judgment must be vacated because the trial court lacked subject matter jurisdiction. In the alternative, Pedro also argues that even if the trial court had subject matter jurisdiction, it improperly denied his motion to reconsider the vacation of the marital settlement agreement, because the agreement was unconscionable and he was coerced into signing it.

¶ 22                              I. Standard of Review

¶ 23    On review, we have two issues before us, and two separate standards of review. For the first issue, we will reverse a trial court's finding of residency only if it is against the manifest weight of the evidence. *Rosenshine v. Rosenshine*, 60 Ill. App. 3d 514, 517 (1978) (a trial court's finding of residency will not be disturbed unless it is against the manifest weight of the evidence). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 24    Our standard of review is different for the second issue: whether the trial court properly denied Pedro's motion to reconsider. An appellate court will not reverse a trial court's decision to grant or deny a motion to reconsider unless there was an abuse of discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007) (hereinafter *GMAC*). "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)). Although the two standards are different, they are both highly deferential standards of review.

¶ 25                            II. Residency Requirement

¶ 26    Pedro argues first on this appeal that the trial court lacked subject matter jurisdiction, pursuant to the Act, to dissolve the parties' marriage. Pedro claims that Brenda provided no proof that either party was an Illinois resident at the time the action was commenced. The

Act states that Illinois courts may "enter a judgment of dissolution of marriage if at the time the action was commenced one of the spouses was a resident of this State or was stationed in this State while a member of the armed services, and the residence or military presence had been maintained for 90 days next preceding the commencement of the action or the making of the finding." 750 ILCS 5/401(a) (West 2008). Pedro argues that Brenda's testimony alone was not sufficient to establish the Act's residency requirement.

¶ 27  At no point during the dissolution proceeding did Pedro argue that the trial court lacked subject matter jurisdiction. Pedro did not file a *pro se* answer, nor did his first attorney file an answer on Pedro's behalf. Pedro did not testify in the prove-up hearing that the trial court lacked subject matter jurisdiction or that the parties had not satisfied the residency requirement, nor did he challenge subject matter jurisdiction in either of his motions. Generally, issues concerning an alleged error not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Lemke v. Kenilworth Insurance Co.*, 109 Ill. 2d 350, 355 (1985).

¶ 28  However, Pedro raises a subject matter jurisdiction issue based on the residency requirement of the Act. *In re Marriage of Passiales*, 144 Ill. App. 3d 629, 634 (1986) ("residence in a divorce case is necessary to confer subject matter jurisdiction on the court"). Subject matter jurisdiction challenges fall under an exception to the general rule about issues raised for the first time on appeal, and a judgment entered by a court that lacked subject matter jurisdiction is void and may be attacked at any time. *In re Marriage of Chrobak*, 349 Ill. App. 3d 894, 897 (2004). If subject matter jurisdiction is lacking, it cannot be conveyed by stipulation, consent, or waiver. *Chrobak*, 349 Ill. App. 3d at 897. We must therefore address the merits of Pedro's subject matter jurisdiction claim.

¶ 29  By arguing that Brenda presented absolutely no proof that either party was an Illinois resident at the time the action was commenced, and that she "merely testified" to her residency, Pedro appears to be arguing that the trial court's factual finding, that the parties resided in Illinois, was against the manifest weight of the evidence. *Passiales*, 144 Ill. App. 3d at 634-35 (a trial court's factual finding of residence will not be disturbed unless it is against the manifest weight of the evidence). Although Pedro argues that Brenda failed to prove that she satisfied the residency requirement of the Act, he does not dispute that the parties were residents of Illinois for 90 days prior to the filing of the petition for dissolution of marriage. In addition, he has not offered any evidence that the parties were residents of any other state for the 90 days prior to the filing of the petition or that either of them was not a resident of Illinois. Pedro's argument is simply that Brenda did nothing more than allege in her verified petition and testify at the prove-up hearing that she and Pedro were residents of Illinois for the 90 days prior to the filing of the petition. Pedro claims that, without additional evidence, Brenda failed to prove that she or Pedro satisfied the Act's residency requirement.

¶ 30  This argument is not persuasive. First, when Pedro failed to file an answer to the petition, he not only failed to *deny* Brenda's allegation that the parties had been residents of Illinois for 90 days, but he also *admitted* the allegation. *Roth v. Roth*, 45 Ill. 2d 19, 23 (1970); *Hecht v. Hecht*, 49 Ill. App. 3d 334, 338-39 (1977). In *Roth*, our Illinois Supreme Court held that "[a] purpose of pleading is to develop the issues to be determined. A failure to respond to an

adversary pleading may constitute an admission of all the facts well pleaded by the adversary and admissions thus drawn from a failure to plead may be considered as evidence." *Roth*, 45 Ill. 2d at 23. See also *Hecht*, 49 Ill. App. 3d at 338-39 (holding that where the allegations of a complaint are not denied, they stand admitted). Thus, Pedro's failure to answer constitutes an admission of the residency requirement.

¶ 31    Even if Pedro had denied Brenda's residency allegation, Pedro's claim that there was no evidence in the record to support a finding of residency is not persuasive. In *Kijowski v. Kijowski*, this court examined whether the trial court had jurisdiction to enter a divorce decree, despite the petitioner's failing to allege in her petition that the parties satisfied the residency requirement. *Kijowski v. Kijowski*, 36 Ill. App. 2d 94, 96 (1962). We held that the failure to allege residency was not fatal, so long as the record disclosed that residency actually existed. *Kijowski*, 36 Ill. App. 2d at 96. In *Kijowski*, the record revealed "undisputed testimony by [the petitioner]" concerning the parties' residence prior to the filing of the petition for dissolution of marriage. *Kijowski*, 36 Ill. App. 2d at 96. Relying solely on the petitioner's undisputed testimony, this court found that the record contained sufficient evidence of residency. *Kijowski*, 36 Ill. App. 2d at 96. Similarly, in the case at bar, Brenda's testimony was undisputed and was sufficient evidence of residency. Therefore, because Pedro admitted Brenda's residency allegation by failing to file an answer, and because he did not dispute her testimony, we cannot say that the trial court's factual finding of residency was against the manifest weight of the evidence. Thus, the trial court had subject matter jurisdiction over the case, and we have subject matter jurisdiction to hear this appeal.

¶ 32                                    III. Motion to Reconsider

¶ 33    Next, Pedro argues that the trial court improperly denied his *pro se* motion to reconsider, arguing that the agreement was unconscionable and he was coerced into signing it. In response, Brenda argues that we must dismiss the appeal or summarily affirm the trial court's decision because Pedro did not prepare a complete record, as required by Illinois Supreme Court Rule 323. Ill. S. Ct. R. 323 (eff. Dec. 13, 2005). As noted, our standard of review with respect to a motion to reconsider is whether the trial court abused its discretion. *GMAC*, 374 Ill. App. 3d at 1078.

¶ 34                                    A. Incomplete Record

¶ 35    Illinois Supreme Court Rule 323(a) provides that "[t]he report of proceedings shall include all evidence pertinent to the issues on appeal." Ill. S. Ct. R. 323(a) (eff. Dec. 13, 2005). Rule 323(c) provides that "[i]f no verbatim transcript of the evidence of proceedings is obtainable the appellant may prepare a proposed report of proceedings from the best available sources, including recollection." Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005). It is incumbent upon Pedro, as the party claiming error, to provide a record sufficiently including all evidence pertinent to the appeal and preserving for review all matters necessary for a disposition. *Murphy v. Chestnut Mountain Lodge, Inc.*, 124 Ill. App. 3d 508, 510 (1984). We will resolve any doubts rising from an incomplete record against Pedro because, absent record evidence to the contrary, we must assume that the trial court acted in conformity with

the law and had before it the necessary facts to support its decision. *Murphy*, 124 Ill. App. 3d at 510.

¶ 36    In the instant case, Pedro argues that the trial court improperly denied his *pro se* motion to reconsider. The trial court scheduled a hearing on the motion for November 17, 2011, and entered an order denying the motion on the same day. The record includes neither a transcript of the hearing nor a bystander's report of the proceedings. If the record fails to "shed light on the court's reasons" for denying the motion, we must conclude that the trial court properly based its decision on the law and the evidence. *In re Marriage of Thomsen*, 371 Ill. App. 3d 236, 242 (2007).

¶ 37    However, in this case, the record does "shed light on the court's reasons" for denying Pedro's motion. *Thomsen*, 371 Ill. App. 3d at 242. Although Pedro failed to submit a transcript or bystander's report of the hearing, the trial court issued a written order finding: (1) that Pedro's *pro se* motion to reconsider raised issues not in his original motion; and (2) that Pedro's *pro se* motion to reconsider violated Illinois Supreme Court Rule 274 (eff. Jan. 1, 2006), which prohibits the filing of multiple postjudgment motions. Since the record includes Pedro's original motion to vacate, his *pro se* motion to reconsider, and the trial court's order setting forth its reasons for denying the motion to reconsider, the record is sufficient for us to review the alleged errors which Pedro now appeals. *Higgins v. Columbia Tool Steel Co.*, 76 Ill. App. 3d 769, 776 (1979).

¶ 38                            B. Illinois Supreme Court Rule 274

¶ 39    Illinois Supreme Court Rule 274 states that parties "may make only one postjudgment motion directed at a judgment order that is otherwise final." Ill. S. Ct. R. 274 (eff. Jan. 1, 2006). On August 11, 2011, Pedro filed his motion to vacate the prove-up. On October 11, 2011, the trial court denied the motion and entered a final judgment dissolving the marriage. On October 27, 2011, approximately two weeks after the entry of the dissolution judgment, Pedro filed the motion to reconsider his motion to vacate the prove-up. Pedro's *pro se* motion to reconsider is the motion at issue in this appeal. Since Pedro filed only one motion after the trial court's entry of final judgment, Pedro's motion to reconsider did not violate Rule 274.[2]

¶ 40                            C. Issues Not Raised in the Motion to Vacate

¶ 41    The trial court was within its sound discretion to deny Pedro's *pro se* motion to reconsider. The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of the existing law. *GMAC*, 374 Ill. App. 3d at 1078. Newly discovered evidence is evidence that was not previously available. *GMAC*, 374 Ill. App. 3d at 1078. A party may raise a new issue for the first time in a motion to reconsider only when a party has a *reasonable*

---

[2]Brenda admits in her brief that the trial court was "possibl[y] mistaken" in finding that the motion to reconsider violated Illinois Supreme Court Rule 274.

*explanation* for why it did not raise the issue earlier in the proceedings. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1022 (2007).

¶ 42    Pedro's original motion to vacate claimed that the financial calculations used in drafting the marital settlement agreement were "incomplete and inaccurate." The motion to vacate was filed by Pedro's second attorney, who had not represented Pedro during the drafting of the marital settlement agreement. However, the motion to vacate did not specify which calculations were "incomplete and inaccurate," or how they were "incomplete and inaccurate." The motion also did not allege that the marital settlement agreement was unconscionable or that Pedro had been coerced into signing it. In contrast, Pedro's *pro se* motion to reconsider claims that the marital settlement agreement was unconscionable and that he signed it only because his first attorney pressured him to do so and because the stress of the dissolution made him feel that he had no choice but to sign it.

¶ 43    On appeal, Pedro does not argue that a change in the law occurred between when the trial court denied his motion to vacate the prove-up and when he filed his motion to reconsider. Nor does he argue that he has any newly discovered evidence to present. However, Pedro does assert that his *pro se* motion addressed errors in the trial court's previous application of the existing law, which is a proper subject for a motion to reconsider. *GMAC*, 374 Ill. App. 3d at 1078. Specifically, Pedro argues that, although "the law looks with favor upon the amicable settlement of the property rights between a husband and wife prior to their divorce, a settlement agreement will be set aside and vacated if said agreement is procured by fraud, coercion or if contrary to the rule of law, public policy, or morals." *In re Marriage of Perry*, 96 Ill. App. 3d 370, 373 (1981). Pedro argues that the trial court improperly refused to set aside the written settlement agreement in light of his claimed coercion and the unconscionability of the agreement.

¶ 44    Pedro cites to numerous cases to argue that marital settlement agreements should be set aside if there is evidence of gross unfairness, coercion, or unconscionability. For example, in *Crawford v. Crawford*, 39 Ill. App. 3d 457 (1976), this court reversed the trial court's entry of a divorce decree that incorporated a marital settlement agreement. *Crawford*, 39 Ill. App. 3d at 458, 464. Before the trial court entered the divorce decree, petitioner obtained new counsel and filed a motion to stay the proceedings and return the case to the trial call. *Crawford*, 39 Ill. App. 3d at 458. The trial court held a hearing on the motion, and petitioner testified that her first attorney had not consulted or advised her of the terms of the settlement agreement before she testified at the prove-up hearing and that she did not understand the significance of the prove-up hearing. *Crawford*, 39 Ill. App. 3d at 458. Petitioner further testified that, although she found the terms of the marital settlement agreement to be unacceptable, she did not object to them at the prove-up hearing because "she did not know that this subject would be mentioned." *Crawford*, 39 Ill. App. 3d at 460. This court found that petitioner's testimony had provided ample evidence that she had been coerced into accepting the agreement by her first attorney. *Crawford*, 39 Ill. App. 3d at 462.

¶ 45    Similarly, in *In re Marriage of Perry*, 96 Ill. App. 3d 370 (1981), this court reversed the trial court's denial of a motion to set aside an oral settlement agreement. *Perry*, 96 Ill. App. 3d at 375. After the prove-up hearing, petitioner retained additional counsel and filed her motion to set aside the oral settlement agreement and reset the case for a contested hearing.

-10-

*Perry*, 96 Ill. App. 3d at 372. The trial court held a hearing on the motion and, as in *Crawford*, the petitioner testified about acts of coercion. Specifically, she testified that her attorney, respondent, and respondent's attorney met for 15 minutes on the morning of the prove-up hearing to negotiate a marital settlement agreement, and she was not present. *Perry*, 96 Ill. App. 3d at 372. When petitioner's attorney informed her of the terms that he had negotiated, she told him that the terms were unfair and that respondent's representations concerning his income and assets were not true. Her attorney responded that he "felt there was no way he could disprove respondent's statements." *Perry*, 96 Ill. App. 3d at 372. This court concluded that petitioner's testimony provided sufficient evidence to indicate that the agreement was procured by coercion and had to be set aside. *Perry*, 96 Ill. App. 3d at 375. *In re Marriage of Moran*, 136 Ill. App. 3d 331, 336-37 (1985) (setting aside a marital settlement agreement because evidence showed that one party had no input in drafting the agreement and repeatedly objected to the terms of the agreement); *In re Marriage of Kloster*, 127 Ill. App. 3d 583, 588 (1984) (holding that a marital settlement agreement will be found unconscionable if it was "hastily contrived" or where a party immediately objects to the agreement).

¶ 46    Unlike in *Crawford* or *Perry*, the appellate record contains no testimony by Pedro or evidence to substantiate his claims. Although the trial court held a hearing on Pedro's motion, Pedro chose not to provide either a transcript or bystander's report of that hearing. Thus, if Pedro offered testimony or evidence at that hearing, it is simply not a part of the record before us. As a result, the record in the case at bar does not disclose any evidence of coercion or unconscionability. Although Pedro argues now that the marital settlement agreement was hastily contrived, that he did not understand its terms, and that his attorney indicated to him that he had no choice but to sign the agreement, we have no evidence to support Pedro's claims and the record does not disclose evidence of coercion or unconscionability. Pedro does not provide evidence of what he did not understand or how the agreement was unconscionable.

¶ 47    By contrast, in *Crawford*, *Perry*, and also in *Moran*, the complaining parties testified to the wrongful behavior of their attorneys and opponents, and the petitioners in these cases were also not part of the settlement proceedings and had no opportunity to object to them. *Crawford*, 39 Ill. App. 3d at 458, 460; *Perry*, 96 Ill. App. 3d at 373; *Moran*, 136 Ill. App. 3d at 333-35. In the case at bar, Pedro was present for the settlement proceedings and the prove-up, and basically agreed to its terms. In addition, on October 11, 2011, after the trial court denied Pedro's motion to vacate the prove-up, Pedro still personally signed a stipulation to have the matter heard as an uncontested case. As a result, the cases cited by Pedro, such as *Crawford*, *Perry*, and *Moran*, do not support his argument.

¶ 48    The facts of this case are closer to the cases of *Stutler v. Stutler*, 61 Ill. App. 3d 201 (1978), and *In re Marriage of De Frates*, 91 Ill. App. 3d 607 (1980). In both *Stutler* and *De Frates*, the appellants argued that the marital settlement agreements were invalid. *Stutler*, 61 Ill. App. 3d at 203 (arguing that she had been coerced into signing a marital settlement agreement that was unfair); *De Frates*, 91 Ill. App. 3d at 608 (arguing that both parties had not agreed to all the terms of the marital settlement agreement). In both cases, this court found that the appellants' reliance on cases like *Crawford* was distinguishable because the

appellate records disclosed no evidence of coercion or unfairness. *Stutler*, 61 Ill. App. 3d at 205 (distinguishing *Crawford*, and holding that the appellate record disclosed the fact that the appellant had participated in settlement negotiations and did not object to the marital settlement agreement before and during the negotiations); *De Frates*, 91 Ill. App. 3d at 613-14 (distinguishing *Crawford* because there was no evidence in the appellate record that the marital settlement agreement had been hastily contrived, that there was coercion, or that the marital settlement agreement was unfair).

¶ 49    Like in *Stutler* and *De Frates*, the appellate record in the case at bar does not indicate that Pedro was coerced or treated unfairly in the negotiations process or in the final settlement agreement. *Stutler*, 61 Ill. App. 3d at 205-06. Instead, the record indicates that Pedro most likely suffered a "change of heart" after the prove-up hearing. *Stutler*, 61 Ill. App. 3d at 205-06. Without any testimony or evidence in the record indicating that Pedro was coerced, or that the marital settlement agreement was unfair or unconscionable, we cannot substitute our judgment for that of the trial court. *Stutler*, 61 Ill. App. 3d at 206. Therefore, we cannot find that the trial court abused its discretion in denying Pedro's motion to reconsider.

¶ 50                                    CONCLUSION

¶ 51    For the foregoing reasons, we affirm the judgment of the trial court. We cannot say that the trial court's factual finding of residency was against the manifest weight of the evidence. Nor can we say that the trial court abused its discretion in denying Pedro's motion to reconsider when Pedro raised new issues not raised in his motion to vacate without a reasonable explanation for why he did not raise the issues in his first motion and without a showing that the trial court misapplied the existing law.

¶ 52    Affirmed.